### RHONE v. TRY ME CAB CO. et al.
### No. 5658.

Court of Appeals of the District of Columbia.

Argued Feb. 15, 1933.

Decided May 29, 1933.

William H. Hastie and Nathan A. Dobbins, both of Washington, D. C., for plaintiff in error.

George E. C. Hayes, of Washington, D. C., for defendant in error.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and HITZ, Associate Justices.

HITZ, Associate Justice.

This case comes here by writ of error to the Municipal Court of the District of Columbia and presents a question of some public importance touching the operation of taxicabs in Washington, under the present system of control, or the lack of it.

The plaintiff in error, who was plaintiff below, was a passenger in a taxicab and claims to have been injured by negligence of its driver.

The declaration names as defendants Williams, the driver; Jackson, registered as owner of the cab; and the Try Me Cab Company, a corporation, applicant for registration of the cab and whose name it bore on the occasion in question.

No process was served upon Williams, and the action was abandoned as to him, though he appeared as a witness for the defense at the trial.

The declaration was in familiar form, claiming damages from the cab company and Jackson, or either of them, as owners or operators of the cab for the personal injuries caused by negligence of the driver alleged to be the servant or agent of the owners or operators.

The two defendants by their pleas denied liability for the driver, asserting that he was an independent contractor with the passenger, and in sole control of the cab at the time of the alleged accident.

The plea of the cab company further denied that it is engaged in carrying passengers for hire; that it ever received the plaintiff as a passenger; that it owns this cab, or any other cab; or that it exercised any control or management of the cab at the time in question.

Jackson's plea admitted ownership of the cab, but asserted that he had no liability therefor at the time of the accident because of

a contractual arrangement between himself and Williams, the driver, by which he received a daily compensation for the cab, of which Williams had full control.

No question was raised against the pleadings; the case was tried on the merits; and at the conclusion of all the evidence the defendants moved for a directed verdict, which was granted; and the main question presented here concerns the correctness of that ruling.

The bill of exceptions states that there was testimony regarding negligence of the driver and resulting injury to the plaintiff sufficient to raise substantial questions for the jury on those issues, but that the case was decided on the legal relations of the parties as disclosed by the evidence.

The plaintiff testified that prior to the occurrence a printed card had been left at her door advertising the Try Me Cab Company; that she had read other advertisements in the telephone directory reading: "Metropolitan, 1911—Try Me Cab Company—A careful and courteous service. Special rates by the hour, day, or week. We go anywhere—reliable chauffeurs. Try Me Cab Company, Metropolitan, 1911." Being induced by these advertisements, she telephoned to the cab company at its advertised office, asking for a cab; that in response a cab was sent to her house marked "Try Me Cab Company," and that she embarked in it, to her injury.

Another witness testified to knowledge of these facts, saying that the cab was marked "Try Me Cab Company, Number 7."

An agent of the director of traffic testified that the official records showed 106 cabs registered under applications of the Try Me Cab Company; that such applications were not required to be made by the owner; that the record relating to the cab in question shows in the space for applicant "Try Me Cab Company." In the space for the signature of the owner appears in typewriting "Try Me Cab Company," in handwriting "Walter Jackson."

The vice president of the cab company testified that it is a nonprofit-sharing corporation, incorporated under the laws of the District of Columbia for the purpose of furnishing its members a telephone service and the advantages offered by use of the corporate name, while the company did not own this cab or any other cab. The defendant Jackson testified that he owned the cab; that he had licensed and registered it as a taxicab; that the name of Try Me Cab Company had been placed on the record because of an inquiry at the license office as to the name of the company in which it was to be used; that he had personally operated the cab until he became ill shortly before the accident, he collecting and retaining all earnings without accounting to the company.

Jackson further testified that, at the time of the accident, he had rented the car to Williams, the driver, for $3.50 per day; that Williams was operating the car under this arrangement on the occasion of the accident, but also under the taxicab permit issued to Jackson, paying the daily rental, exercising full control, and retaining all receipts with no accounting to the company or to him.

Williams corroborated Jackson in all matters, admitting that he was driving at the time of the accident and in full charge of the cab.

The counsel stipulated that the advertisements mentioned by the plaintiff were authorized by the cab company, and that Jackson was the owner of the car.

In this state of case, the defendants contended that the company was not liable for the plaintiff's injuries because Jackson owned the car; and that Jackson was not liable because he rented the car to the driver, who emerges from their dealings inter sese as an independent contractor with the customers of the company and solely responsible for their injuries, if any one is. It is further contended that no relation of master and servant or principal and agent existed among the parties, since the driver was a bailee with control of the bailment, and that the reliable chauffeurs of the company, who go anywhere, go upon their own, with no accountability to the company and no liability to the passenger, beyond the personal responsibility of the driver.

The trial court accepted this view of the situation and directed a verdict for both defendants.

But we find it clear that the cab was engaged in a public calling; under license of public authority; issued upon the joint application of the cab company and Jackson; that at the time of the accident it bore the name of the company; was sent out by the company in response to an application induced by its advertisements; that it was made available for that purpose by Jackson; and operated by a driver furnished by Jackson, under a public vehicle license issued to Jackson.

Upon this showing we are of opinion that both the company and Jackson are estopped to deny liability to a passenger so induced to

employ the cab and injured by negligence of the driver sent to operate it. Crane v. Postal Telegraph Co., 48 App. D. C. 54; Friedman's Shop v. Yeates, 216 Ala. 434, 113 So. 299; Hannon v. Siegel-Cooper Co., 167 N. Y. 244, 60 N. E. 597, 52 L. R. A. 429; Fields v. Evans, 36 Ohio App. 153, 172 N. E. 702; Maloney Co. v. Mid-Continent Petroleum Corp. (C. C. A.) 49 F.(2d) 146; Pennsylvania Railroad v. Hoover, 142 Md. 251, 120 A. 526; Schweinhaut v. Flaherty, 60 App. D. C. 151, 49 F.(2d) 533; 2 Cooley on Torts, § 358, page 595 (4th Ed.); Restatement of the Law of Agency, § 490, American Law Institute 1930; Charles Young, Appellant, v. Anthony Masci, 53 S. Ct. 599, 77 L. Ed. ——, decided April 24, 1933.

In the trial court the plaintiff asked the vice president of the company on cross-examination three questions tending to bring out the precise relations of the company to the owner and the driver of this cab, namely:

1. What agreement was there between the owner of this cab and the Try Me Cab Company, with respect to the operation of the cab?

2. What could the Try Me Cab Company do to the driver of such a cab as this if he refused to go in response to a call received at the office of the company?

3. Did the Try Me Cab Company provide a garage for the repair of such cabs as the one here involved?

Objections to these questions were sustained, and they were excluded. But we consider them material to the full development of the case, especially in view of the elaborate and detailed averments of the pleas, and if the case should be retried we are of opinion that these questions might well be admitted, if again presented.

Shortly after the record of this case was filed in this court, the two appellees joined in a motion for leave to file typewritten briefs instead of the usual printed briefs, on the ground of their financial inability to pay for the printing.

This motion was supported by an affidavit of poverty, and was therefore granted.

So this case proceeds in this court in forma pauperis on all sides, which serves to emphasize the public interest and private hardship frequently appearing in such litigation in this jurisdiction.

For we now have in Washington hundreds of taxicabs engaged—very literally—in a public calling; performable only upon the public streets under public license; holding out to the public an illusion of incorporated responsibility which they do not possess; painted, named, and numbered to heighten that illusion; each cab constituting a potential danger both to its passengers and to the public, yet having no financial responsibility to either beyond an equity of redemption in some used motor car.

In this case, even that is absent, for while Jackson asserted his ownership of the car at the license office and in his testimony, and while his ownership was stipulated by counsel, his motion papers show that he never had any interest in the car beyond attempting to buy it under a conditional sales contract subsequently forfeited.

While the cab company apparently never owned any cab, nor anything else, beyond a chartered misnomer which it leased to cab drivers, and through which it called itself a cab company when in fact it was a cab calling company.

Whether such a charter, for such a purpose, and with such a result, is properly granted under the Statute of Incorporations is another question, not open to us in this case, but which might be presented by quo warranto or other appropriate proceedings.

The present methods of selling motorcars and licensing public vehicles lead naturally to the present situation of cutthroat irresponsibility in a public service of great importance and daily danger to many persons.

While our duty is to apply the law as we find it, in this respect we find it so unsatisfactory that we feel impelled to suggest that some change should be made, either by legislative enactment or municipal regulation.

Perhaps an improvement of this situation can be found in a system of compulsory insurance preliminary to the license and running in rem with the car in favor of any one injured by its negligent operation under any arrangement with the licensee, such as many of our states now have and such as appears to have covered hackney coaches in London for a hundred years.

The judgment of the Municipal Court is reversed, and the cause remanded.

Reversed.