## PAGE v. D. M. D. TAXI CORPORATION.

### SAME v. PORTER et al.

### Nos. 6859, 6860.

United States Court of Appeals for the District of Columbia.

Argued May 4, 1937.

Decided June 7, 1937.

Robert C. Handwerk and Jacob N. Halper, both of Washington, D. C., for appellant.

Harry H. Bettelman, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

GRONER, J.

These two cases were tried together below and were consolidated for hearing here. They were actions begun by appellant to recover for injuries inflicted upon her by a Blue Light taxicab in Washington city in May, 1933. She alleged and testified she was struck by the cab as she was crossing the street at Hillyer place and Twentieth Street N. W. The evidence unmistakably shows negligence on the part of the driver of the cab.

The first action was begun against Blue Light Cab Corporation, D. M. D. Taxi Corporation, Paul R. Gross, and Kenyon O. Hollingsworth. The allegations were that Blue Light and D. M. D. Corporation "were engaged in the business of operating, maintaining, and controlling the operation of certain motor vehicles"; and that the two corporations, so trading, placed the insignia of Blue Light Corporation on a taxicab which was owned by Gross and D. M. D. Corporation and that Hollingsworth as their agent was the driver of the cab. There was no service on Gross or Hollingsworth. Blue Light and D. M. D. answered, denying all the allegations of the declaration.

In the second action appellant joined as defendants Robert L. Porter, Washington Cab Sales Corporation, Ben Reubens, George N. Dolton, and Jack Dolton. The last named was not served. The declaration in this action ignored the corporate entity of Blue Light and charged that the

named defendants jointly operated, as a common carrier of passengers for hire, a fleet of taxicabs bearing a distinctive color design and known as Blue Light cabs; that defendants were engaged in a joint enterprise in which all had a pecuniary interest. Each defendant served denied maintenance, operation, and control of a fleet of taxicabs or of the taxicab involved here and denied being engaged in a joint enterprise. There was a trial to a jury and in the first action the court instructed a verdict in favor of D. M. D. Corporation, and the jury returned a verdict against Blue Light Corporation for $3,500. In the second action there was a directed verdict for all defendants. The record is meager and poorly prepared. Enough appears, however, to show that in the first action the plaintiff recognized the corporate entity of Blue Light and proceeded against it as co-operator with D. M. D. and Gross as owners, while in the second action she sought to reach the individuals behind the corporate names and to hold them as joint adventurers.

The evidence introduced by plaintiff, except on the subject of the injury and its results, proves little or nothing helpful to her case. The three corporations are shown to be Delaware corporations organized sometime prior to the injury. Blue Light appears to be a non-stock corporation. Apparently it owns nothing. There is no evidence as to the financial condition of D. M. D. or of Washington Cab Sales Corporation, except that the former owns thirty cabs in operation in Washington city and that the Washington Cab Sales Corporation has issued some stock and has a regular place of business. Presumably, plaintiff's effort was to show that Blue Light was merely an instrumentality or adjunct of the two other corporations and the individual defendants, set up for the purpose of escaping liability. Three of defendants were called as witnesses for plaintiff, and their testimony taken together showed that the three corporations had the same business address and a common telephone number. Jack Dolton, one of the defendants (who was not served), was president of Washington Cab Sales Corporation and of D. M. D. His brother, George, was manager of Blue Light, treasurer of D. M. D., and secretary of Washington Cab Sales Corporation. The defendant Reubens was treasurer of Washington Cab and of Blue Light. All hands agreed that Jack Dolton was the head man. Washington Cab was shown to be engaged as sales agent in disposing of taxicabs. The cabs sold by it were painted in the design of Blue Light, and the purchasers—who apparently became members of Blue Light—were entitled to the benefit of call boxes where the telephone messages from prospective passengers were received, and each of the members paid a proportionate share of the cost of maintenance. Reubens, as treasurer of Washington Cab, collected money from the individual members of Blue Light as payments on the cabs they had purchased, and a part of this money went for the maintenance of telephone service. But there is no evidence in the record of the ownership or control of the cab which did the damage. All that is shown is that Hollingsworth was the driver and that it was a Blue Light cab.

The first declaration alleged ownership in D. M. D. and Gross, but there is no proof of this in the record. If D. M. D. had admitted ownership, or if ownership had been proved as against any of the corporate or individual defendants, or if in addition enough had been shown to prove a joint enterprise, we would have an entirely different case; but here we have only a jumble of corporate defendants and individual defendants, with nothing in the way of evidence to sustain the charge that any one or more of them had either ownership or control, direct or indirect, at the time of the injury. Equally unsatisfactory is the proof of joint enterprise. The facts proved may, and we are disposed to think do, tend to show some general identity of interest, and there are not lacking some indications of a purpose on the part of the other defendants to use the name "Blue Light" as a trade name or to use Blue Light, as a corporation, as a mere agency or instrumentality through which to avoid liability; but there is wholly lacking that degree of proof which is necessary to sustain a recovery on the theory upon which plaintiff proceeded. Plaintiff evidently sought to bring herself within the rule we announced in Callas v. Independent Taxi Owners' Association, 62 App.D.C. 212, 66 F.(2d) 192, and repeated in Rhone v. Try Me Cab Company, 62 App.D.C. 201, 65 F.(2d) 834, and Gale v. Independent Taxi Owners Association, 65 App.D.C. 396, 84 F.(2d) 249.

In the Callas Case a pedestrian was struck by a cab bearing the insignia "Diamond Cab Company," a trade-name under which the Independent Taxi Owners Association did business. The evidence was

220

that the Association neither owned nor operated cabs, and the lower court felt that it could not be held liable to a pedestrian, and so directed a verdict. Judge Hitz, however, pointed out that the Association's charter gave it power to own cabs, that its trade-name was on the cab at the time of the accident, that consequently the cab was legally presumed to be in the custody and on the business of the corporation whose name it bore, and that it was for the jury to determine whether or not the evidence mentioned overcame the presumption.

In the Rhone Case a passenger was involved. Try Me Cab Company was a corporate association of cab owners and drivers established for the purpose of furnishing facilities to its members. It actually owned no cabs, but advertised as being equipped to furnished "Try Me" cabs to the public, and we held that the company was estopped to deny its liability to a passenger hurt by a driver, even though technically the latter was an independent contractor.

The Gale Case, like the Rhone Case, involved injuries to a passenger, and the plaintiff sought to hold the Association on the theory that it maintained and operated cabs as a joint enterprise. One Dobkin was the owner of the particular cab in which the plaintiff was riding, and the court was asked to instruct—negligence being shown —that if it found that the Association, Dobkin, and others were engaged in an enterprise for profit and combined their property, money, and skill in the business, there should be a verdict against both the Association and Dobkin. The trial court refused so to instruct, and we held this error.

In all those cases we were confronted with a situation of this sort: Taxicab corporations or mutual associations were placing their names and insignia on cabs, were making a show of ownership as well as of financial responsibility, were inviting the public to use the cabs under the false notions engendered by such holdings-out, and then, when injury was negligently inflicted by one of the cabs, were defending against liability on the ground that ownership and control were lodged elsewhere. We declined, as far as we were able, to accept such a defense because we conceived it to be our duty to circumvent fraud and to protect the public interest. And in the Rhone Case we were at pains to point out the necessity for adequate regulatory legislation to guarantee in those who offer themselves upon the streets of Washington as public carriers of passengers for hire financial ability to respond in damages to those injured by their negligence. But nothing has been done to correct what we continue to think is a growing public menace. We, of course, can do no more. The instant case is a fair illustration of conditions which need correction, for here plaintiff, with a clear case of liability, is deprived of relief because she cannot untangle a maze of corporate and individual associations and place responsibility upon those who might be able to satisfy a judgment. Blue Light Cab Corporation—the name which is set up to attract the public eye—is nothing and has nothing; but that condition we cannot remedy.

Affirmed.