Menasse **GEBREMARIAM**, Petitioner,

v.

**DISTRICT OF COLUMBIA HACKERS' LICENSE APPEAL BOARD,** Respondent.

No. 87–487.

District of Columbia Court of Appeals.

Submitted Oct. 8, 1987.
Decided Dec. 2, 1987.

Edward F. Kearney was on the brief, for petitioner.

Frederick D. Cooke, Jr., Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Charlotte Brookins–Pruitt, Asst. Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before PRYOR, Chief Judge, NEWMAN and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Petitioner is a District of Columbia taxicab driver. His hacker's license was suspended for six months because of his refusal to transport a passenger waiting at Washington National Airport in Virginia.[1] Before us, he principally[2] asserts that the D.C. taxicab regulations did not and could not apply to his activity at Washington National Airport, and that the D.C. Hackers' License Appeal Board (the "Board") thus had no power to suspend his license.[3] We affirm.

Petitioner was charged with violating 15 DCMR 819.5 (1987), which provided: "No driver of a taxicab shall refuse to transport a passenger while holding his or her taxicab forth for hire." On December 1, 1986, the complainant, recently arrived at National with her son, indicated to a uniformed taxi dispatcher at one of the terminals that she needed a taxi and gave him her destination. The dispatcher communicated this information to a uniformed "floater" responsible for signaling the cab drivers. Petitioner's was the next cab in a line of available taxis, and complainant was the first in line to be dispatched. But when the "floater" signaled petitioner to stop and pick up the complainant, petitioner drove past the complainant to the next terminal. Petitioner claims he misunderstood the signal as one directing him to the next terminal.

The D.C. taxicab regulations by their own terms "shall apply to the operation of every taxicab licensed in the District of Columbia while being operated as a taxicab." 15 DCMR 800.1 (1987). Furthermore, "[a]ll provisions of [the taxicab regulations] shall be liberally construed in order that the true intent and meaning of the provisions may be fully carried out." 15 DCMR 800.2 (1987). Nothing in the regulations limited their provisions to taxicab operation within the District of Columbia. While at Washington National Airport, petitioner was operating under the auspices of his D.C. license. His very right to pick up passengers there was directly dependent upon the fact that both he and his taxicab were licensed by the District of Columbia.[4] Furthermore, he was required

---

1. Although part of National Airport is located in the District of Columbia, both parties agree that the taxi dispatch area where this incident took place is located in Virginia. At the time of the incident National Airport was operated by the Federal Aviation Administration. D.C.Code § 7–1101 to –1107 (1981).

2. Petitioner's other arguments are meritless. He complains about the exclusion of certain evidence. The Board has power to exclude evidence that is repetitious or redundant, 15 DCMR § 1107.5 (1987), and to determine the materiality, relevance, and probative value of any evidence submitted, 15 DCMR § 1107.6 (1987). We find no error here. Petitioner also asserts that the proof is insufficient to support a violation. The Board's decision must be affirmed on appeal if it is supported by substantial evidence.

*Jones v. District of Columbia Hackers' License Appeal Board,* 455 A.2d 896, 897 (D.C.1983). Such evidence is present in the record before us.

3. Although not applicable to the case before us, the District of Columbia regulatory scheme for taxicabs has recently been substantially revised, *see* D.C.Code §§ 40–1701 to –1719 (1986 repl. & 1987 Supp.), as has the regime for operation of National Airport, *see* Metropolitan Washington Airports Act of 1986, Pub.L. No. 99–591, 100 Stat. 3341–376 to –389 (1986).

4. In order to operate a taxicab at National Airport, a person must, among other requirements, "be licensed to operate a taxicab, and the taxicab must be licensed, by one of the following: ... (vii) The District of Columbia." 14 CFR § 159.2(c)(4) (1987).

to be in possession of such licenses, and to surrender them for inspection upon request of an airport police officer. 14 CFR § 159.2(c) (5)–(6) (1987).

Because petitioner was operating at the airport as a D.C. taxicab licensee, he was required to act in accordance with the District of Columbia regulations.[5] "By accepting and acting under the license, the licensee consents to all valid conditions imposed thereby, including provisions for its revocation." 51 Am.Jur.2d *Licenses and Permits* § 58 (1970). The Board was authorized to suspend or revoke a license for a violation of § 819, with which petitioner was charged. 15 DCMR § 801.1 (1987); *Pillis v. District of Columbia Hackers' License Appeal Board,* 366 A.2d 1094, 1096–97 (D.C.1976).[6]

*Affirmed.*

---

5. This is not a situation where the D.C. regulations were in conflict with the federal airport regulations, which also governed petitioner's activities. Indeed, the two regulations were entirely consistent. The airport rules provided that all taxicab operators at National Airport "must accept as passengers those persons and only those persons assigned by the taxicab dispatcher...." 14 CFR § 159.2(c)(2) (1987).

6. This is not a situation where the District of Columbia is attempting to exercise general regulatory authority beyond its borders, nor to impose criminal sanctions for out-of-state conduct. The Board was simply exercising its licensing authority over a licensee. *Cf., e.g., In re Wolff,* 490 A.2d 1118 (1985) (attorney disbarred for a conviction of an offense involving moral turpitude, where the offense occurred out-of-state). As a general proposition, when more than one state has a sufficiently substantial contact with a particular activity, either state could constitutionally exercise judicial jurisdiction over that activity. *See* R. LEFLAR, AMERICAN CONFLICTS LAW § 55, at 105 (3d ed. 1977).