Yvonne **FLOYD–MAYERS**, et
al., **Plaintiffs**,

v.

**AMERICAN CAB CO.**, et al.,
**Defendants**.

Civ. A. No. 89–1777 (CRR).

United States District Court,
District of Columbia.

March 20, 1990.

---

John C. Keeney, Jr., Craig A. Hoover, L. Anthony Sutin, and William P. Flanagan of Hogan & Hartson, Washington, D.C. and Joseph M. Sellers and Avis E. Buchanan of Washington Lawyers' Committee for Civil Rights Under Law, Washington, D.C., for plaintiffs.

J.E. Wingfield and Harry Goldwater, Washington, D.C., for defendant American Cab Co.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Plaintiffs are suing American Cab Company ("American"), alleging that drivers in taxicabs bearing American's colors and markings refused to provide service to plaintiffs on account of their race in violation of, *inter alia,* 42 U.S.C. § 1981. American has filed a motion for summary judgment. The Court will deny the summary judgment motion because: (1) one of American's arguments to negate vicarious liability is estopped as a matter of law while the other involves disputed issues of material fact; and (2) administrative exhaustion is not a prerequisite to this § 1981 claim.

### I.  Factual Background

This action arose out of a number of incidents allegedly involving taxicabs bearing American's colors and markings.[1] Plaintiffs claim that in one incident an American taxicab passed by a black prospective passenger to pick up a white passenger instead.  In three other incidents American taxicabs allegedly refused to pick up black prospective passengers because their destinations were predominantly black neighborhoods in Washington, D.C. In each of these incidents plaintiffs allege that they were refused taxicab service due to their race by drivers in American taxicabs who operated, and at times leased, the vehicles with American's authorization.

Moving for summary judgment, American claims that it was merely a "lessor" of the vehicles and of its distinctive colors and markings.  American asserts that because it neither employs the taxicab drivers nor exercises control over their work activities, it cannot be held vicariously liable for the drivers' actions.  However, American does insure the taxicabs it leases and accepts complaints from governmental agencies concerning its taxicab drivers' work activities.

### II.  Analysis

Fed.R.Civ.P. 56(c) requires that the Court grant a motion for summary judgment if the pleadings and supporting affidavits and other submissions "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  It is well-established that the Court must believe the non-movant's evidence and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).  However, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to avoid summary judgment]; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. at 2512.

### A.  American's Vicarious Liability

■ The issue of whether American may be held vicariously liable under § 1981 in this case implicates the doctrine of *respondeat superior.  General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 392–95, 102 S.Ct. 3141, 3150–52, 73 L.Ed.2d 835 (1982); *id.* at 403–404, 102 S.Ct. at 3156–57 (O'Connor, J., concurring).  The theory of *respondeat superior* allows a plaintiff to hold a master/employer liable for the wrongful acts of his or her servant/employee. *See generally* W. Prosser & W. Keeton, *The Law of Torts* §§ 69–70, at 499–501 (5th Ed.1984).  Thus, the master-servant or employer-employee relationship is a form of agency in which the employer hires the employee to act on his or her behalf, subject to the employer's control and consent to act. *General Bldg. Contractors Ass'n,* 458 U.S. at 392, 102 S.Ct. at 3151.  For an employer to be held vicariously liable for the intentional tort of an employee, the tort must occur within the scope of employment and be actuated, at

---

**1.** The Court recognizes that American may not own the taxicabs at issue.  Nevertheless, for the purposes of this Memorandum Opinion, the Court henceforth will use the term "American taxicab" as a shorthand reference for "taxicab bearing American's colors and markings."

least in part, by a purpose to further the employer's business and not be unexpected in view of the employee's duties. *Weinberg v. Johnson,* 518 A.2d 985, 990 (D.C. 1986).

In light of the foregoing, whether American should be held liable under *respondeat superior* for the taxicab drivers' alleged intentional racial discrimination depends on the answers to two questions. First, is American, by virtue of its relationship with its drivers, estopped to deny liability for their alleged tortious acts? Second, if American is estopped to deny liability based on the absence of an employer-employee type of relationship, can it nevertheless defeat vicarious liability by arguing that the taxicab drivers' actions were beyond the scope of their "employment"?

Under District of Columbia law governing taxicab companies, the absence of a traditional "employer-employee relationship" does not allow American to avoid vicarious liability for its drivers' actions. American is correct that in most instances proof that an employer-employee relationship existed is a prerequisite to invoking the doctrine of *respondeat superior.* However, in *Rhone v. Try Me Cab Co.,* 65 F.2d 834 (D.C.Cir.1933), the United States Court of Appeals for this Circuit created an exception to this rule. Under *Rhone* and its progeny, the law in the District of Columbia is that a taxicab company is estopped as a matter of law to deny vicarious liability when one of its drivers injures a passenger and the taxicab, regardless of who owns it, bears the company's colors and markings. *Id.* at 835–36; *Tarman v. Southard,* 205 F.2d 705, 706 (D.C.Cir.1953). Thus, proof of a traditional employer-employee relationship is unnecessary, because the "relationship" prong of the *respondeat superior* doctrine is satisfied as a matter of law in this case (at least for the purposes of this summary judgment motion) by the application of *Rhone's* estoppel rule.

Instead of denying that *Rhone* applies to this case, American contends that it merely creates a rebuttable presumption that vehicles bearing a taxicab company's colors and markings are in fact owned or controlled by that company. As support for this proposition American cites the post-*Rhone* case of *Harlem Taxicab Ass'n v. Nemesh,* 191 F.2d 459, 461–62 (D.C.Cir. 1951). However, the *Nemesh* court applied a rebuttable presumption of actual ownership instead of *Rhone's* estoppel rule because the plaintiff in *Nemesh* was not a passenger in the taxicab. *Id.* at 462 (Proctor, J., concurring). By contrast, when the plaintiff is a taxicab passenger, a contractual relationship exists and the *Rhone* estoppel rule controls. *See Tarman v. Southard,* 205 F.2d 705, 706 (D.C.Cir.1953) (taxicab company estopped to deny liability to passenger assaulted by driver regardless of who actually owned taxicab). Cases not applying *Rhone's* estoppel rule are distinguishable as involving non-passengers, *see Montague v. Goolsby,* 237 F.2d 776, 777 (D.C.Cir.1956) (applying *Nemesh* court's rebuttable presumption analysis in suit brought against taxicab company by non-passenger); *Jeter v. Shash,* No. 85–3538, slip op. at 2 (D.D.C. June 11, 1986) (taxicab company not estopped to deny liability to non-passenger where company lacked ownership or control over taxicab), or unauthorized drivers, *see Simon v. City Cab Co.,* 78 F.2d 506, 507–09 (D.C.Cir.) (taxicab company held not liable as a matter of law for injuries to non-passenger where driver was stranger to company), *cert. denied,* 296 U.S. 640, 56 S.Ct. 173, 80 L.Ed. 455 (1935).[2]

Accordingly, on the facts of this case, the Court must apply *Rhone's* estoppel rule against American if the plaintiffs—who were prospective passengers—were "passengers" under District of Columbia law.

---

**2.** Implicit in the cases discussed above is the premise that the taxicab driver was authorized, either expressly or impliedly, to operate the taxicab company's vehicle. Accordingly, courts in this jurisdiction have applied traditional *respondeat superior* analysis instead of *Rhone's* estoppel rule when a passenger has been injured by a driver who was a complete stranger to the taxicab company being sued. *See, e.g. Marchetti v. Olyowski,* 181 F.2d 285, 287–88 (D.C.Cir. 1950). American does not contend that the taxicab drivers involved in this action are strangers or that they were not authorized to operate its taxicabs.

In *Gebremariam v. District of Columbia Hackers' License Appeal Board,* 533 A.2d 909 (D.C.1987) the court upheld the suspension of a taxicab driver's license because he refused "to transport a *passenger*," namely an individual waiting for taxicab service at National Airport. *Id.* at 910 (emphasis added); *cf. Polanski v. Trans World Airlines,* 523 F.2d 332, 335 (3d Cir.1975) (holding that airlines are "required to treat all potential passengers and users equally"). The District of Columbia's Municipal Regulations also address this issue directly, stating that "[n]o driver of a taxicab shall refuse to transport a *passenger* while holding his or her taxicab forth for hire." 15 D.C.M.R. § 819.5 (1987) (emphasis added).

In sum, the plaintiffs, who sought to become American taxicab passengers, are entitled to the same legal protection as passengers. American is estopped as a matter of law to argue that it is not vicariously liable for its drivers' allegedly discriminatory acts merely because it does not have a traditional employer-employee relationship with the taxicab drivers.

■ Because American's second argument to avoid vicarious liability—that the acts of its taxicab drivers were beyond the scope of their employment—involves material facts still in dispute, the Court cannot grant summary judgment on that basis either. Informed by public policy considerations including concerns about taxicab companies' lack of financial accountability, the *Rhone* court elected to estop taxicab companies from denying liability based solely upon the lack of a traditional employer-employee relationship. *Rhone,* 65 F.2d at 835. However, *Rhone* never addressed, and certainly did not eliminate, the *respondeat superior* doctrine's other requirement that employers may be held vicariously liable only if the employee's act was "within the scope" of his or her employment. *See Weinberg v. Johnson,* 518 A.2d 985, 990 (D.C.1986) ("for an employer to be held vicariously liable for the intentional tort of [an employee], the tortious act must occur within the scope of employment"); *Penn Central Transp. Co. v. Reddick,* 398 A.2d 27, 29 (D.C.1979) ("mere existence of the

master and servant relationship is not enough to impose liability on the master").

An employee's act is within the scope of his or her employment if the purpose of the act is, at least in part, to further the employer's business and if the act is not unexpected in view of the employee's duties. *Jordan v. Medley,* 711 F.2d 211, 214 (D.C. Cir.1983) (Scalia, J.); *Weinberg,* 518 A.2d at 990. The first prong of the scope of employment test—the "purpose" or "intent" requirement—negates the employer's vicarious liability for any act committed by an employee *solely* for the employee's own purposes. *Weinberg,* 518 A.2d at 990; *see Jordan,* 711 F.2d at 216. Also, the "foreseeability" prong requires that, for vicarious liability to attach, the employee's tortious act must be at least incidental to the conduct authorized by the employer. *Jordan,* 711 F.2d at 214; *Weinberg,* 518 A.2d at 990.

Whether an employee's act was within the scope of employment is a question of fact that usually must be determined by a jury. *Jordan,* 711 F.2d at 215; *Skeen v. Federative Republic of Brazil,* 566 F.Supp. 1414, 1418 (D.D.C.1983). However, it becomes a question of law for the Court when the evidence is so insufficient that no reasonable trier of fact could conclude that the act was within the scope of employment. *See id.* (quoting *Penn Central Transp. Co.,* 398 A.2d at 32).

On this record, resolving all reasonable inferences in the plaintiffs' favor, the Court must hold that whether the taxicab drivers' alleged acts of discrimination were within the scope of their "employment" relationship with American implicates disputed issues of material fact that a jury must resolve. There is sufficient evidence for reasonable jurors to find that the drivers committed the alleged acts of discrimination, at least in part, for the purpose of furthering American's business. American has offered no evidence that the drivers were acting as anything other than American taxicab drivers when the alleged discriminatory acts occurred or that the drivers did not intend to further American's business by hiring out their taxicabs.

Moreover, on this record, a reasonable fact-finder could conclude that the discriminatory acts were a foreseeable aspect of the taxicab drivers' duties. *See Lyon v. Carey*, 533 F.2d 649 (D.C.Cir.1976) (affirming jury verdict holding company vicariously liable for its deliveryman's rape and assault of woman accepting delivery). Thus, there are disputed issues of material fact that must be resolved by a jury and not by the Court on a motion for summary judgment.

### B. Administrative Exhaustion

■ There is no merit to American's argument that this suit is not properly before the Court because the plaintiffs did not first exhaust their administrative remedies before the District of Columbia Taxicab Commission ("Commission"). It is well-established that administrative exhaustion usually is not a prerequisite to bringing a § 1981 claim in federal court. *Johnson v. Railway Express Agency*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975) (exhausting remedies afforded by Title VII is not a prerequisite to bringing § 1981 action in federal court); *see Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732, 737 (3d Cir.1983) (exhausting remedies in proceedings before Department of Education is not a prerequisite to bringing § 1981 and § 1983 claims); *Donaldson v. Taylor Products Div. of Tecumseh Products Co.*, 620 F.2d 155, 158 (7th Cir.1980) (exhausting labor union's internal remedies is not a prerequisite to employee's bringing § 1981 claim against union). Moreover, American has not cited any authority that, upon close examination, truly supports its contention that plaintiffs must exhaust their administrative remedies before the Commission.

Nor does the Court find that persuasive public policy reasons exist in this case for requiring plaintiffs to exhaust their remedies before bringing their § 1981 claims in this Court. As an initial consideration, since plaintiffs never presented their claims to the Commission in the first place, the Court need not restrain itself to avoid interfering with a pending District of Columbia administrative proceeding. *See McKart v.*

*United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969) ("A primary purpose [of the exhaustion doctrine] is ... the avoidance of premature interruption of the administrative process."). No interruption or disruption of the Commission's administrative process would ensue if the Court entertains this lawsuit. Furthermore, while the Court recognizes the Commission's greater expertise in its specialized field of regulating the District of Columbia taxicab industry, the judiciary is better-equipped to resolve disputes arising out of allegations of discrimination in violation of federal and District of Columbia civil rights statutes.

More important, there is no indication that the remedies which the Commission could conceivably grant would adequately redress the violations alleged in plaintiffs' Complaint. It is true that the Commission has "the responsibility ... for the overall regulation of taxicabs, taxicab companies, and taxicab associations," 40 D.C.Code Ann. § 1707(a), and the power to impose civil fines and penalties, including suspension or revocation, § 1707(b)(2)(G). However, American can point to no section of the D.C.Code or any other authority—and the Court can find none—that empowers the Commission to grant *private citizens* the kind of remedies (monetary damages and injunctive and declaratory relief) that plaintiffs seek. In short, the administrative remedies available to plaintiffs are, if not non-existent, at the very least inadequate. It is well-established that administrative exhaustion is not required when "remedies available under the administrative scheme are not coextensive with those available in an Article III court." *Silverman v. Barry*, 727 F.2d 1121, 1123 n. 3 (D.C.Cir.1984) (Bork, J.) (citing *Wilkerson v. Johnson*, 699 F.2d 325, 329 (6th Cir. 1983); *Jose P. v. Ambach*, 669 F.2d 865, 869 (2d Cir.1982)), *cert. denied*, —— U.S. ——, 109 S.Ct. 394, 102 L.Ed.2d 383 (1988). Thus, even if administrative exhaustion were a prerequisite to bringing this civil rights suit in federal court, the inadequacy of the administrative remedy would permit the plaintiffs to sue immediately without

initiating proceedings before the Commission.

### III. Conclusion

American's two-pronged effort to avoid vicarious liability is unsuccessful at this stage of these proceedings. First, American is estopped as a matter of law from relying on the absence of a traditional employer-employee relationship between American and its taxicab drivers to argue that the doctrine of *respondeat superior* should not apply. Second, whether the alleged discriminatory acts of the taxicab drivers were sufficiently within the scope of their "employment" to impute liability to American is a question that raises disputed issues of material fact to be resolved by a jury. In addition, the Court holds that plaintiffs may pursue their § 1981 and other discrimination claims in this forum without first exhausting their administrative remedies, if any, before the Commission. Therefore, American's motion for summary judgment must be denied.

An Order in accordance with the foregoing Memorandum Opinion will be issued of even date herewith.