Bryan **GREENE**, Plaintiff,

v.

**AMRITSAR AUTO SERVICES COMPANY, LLC and Balvir Singh Johal, Defendants.**

**No. Civ.A. 01–0630 RMU.**

United States District Court, District of Columbia.

June 18, 2002.

E. Desmond Hogan, Audrey E. Moog, Hogan & Hartson, L.L.P., Susan E. Huhta, Washington, DC, for Plaintiff.

George Joseph Hughes, George Christopher Courtot, Elizabeth Hughes Hughes & Bentzen, PLLC, Horace L. Bradshaw, Jr., Washington, DC, for Defendants.

### *MEMORANDUM OPINION*

URBINA, District Judge.

#### DENYING DEFENDANT AMRITSAR'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This civil-rights matter comes before the court upon defendant Amritsar Auto Services Company, LLC's ("Amritsar") motion for summary judgment. The plaintiff, Bryan Greene, alleges that the individual defendant, Balvir Singh Johal ("Johal"), a taxicab driver for Amritsar, refused to provide service to the plaintiff because of the plaintiff's race, in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981 *et seq.*, and the District of Columbia Human Rights Act, as amended, D.C.Code §§ 1–2519 *et seq.* ("DCHRA"). Upon consideration of the parties' submissions and the relevant law, the court denies the defendant's motion.

### II. BACKGROUND

#### A. Factual Background

The plaintiff is an African–American man who resides in the District of Columbia and is employed as the director of Policy and Program Evaluation and chief policy advisor in the Office of Fair Hous-

ing and Equal Opportunity at the U.S. Department of Housing and Urban Development ("HUD"). *See* Compl. ¶ 5. Defendant Amritsar is a company that provides taxicab services in the District of Columbia under the trade names of "Your Way Cab Association" and "Atlantic Cab Association." *See id.* ¶ 6. Defendant Johal owns and drives a taxicab bearing the name, logo, colorings, and markings of Your Way. *See id.* ¶ 7.

The gravamen of the complaint is that the plaintiff attempted to procure taxicab service from defendant Johal, who allegedly refused service on account of the plaintiff's race. *See id.* ¶¶ 13–15. The plaintiff states that on the night of April 2, 2000, at about 9:30 p.m., he tried to hail a taxicab from the entrance of a hotel, located in the southwest quadrant of the District of Columbia. *See id.* ¶ 10. "Neatly" attired in a black baseball jersey, green checkered shorts, army-green socks, black sneakers, and eyeglasses, the plaintiff carried a green knapsack and a white shopping bag. *See id.* ¶ 11. He had walked the few blocks from his office in the HUD building to the hotel. *See id.* ¶ 10. The plaintiff explains that catching a taxicab at the hotel is easier than trying to get one on the street outside the HUD building, which is "virtually deserted" at that hour. *See id.* The plaintiff entered the hotel lobby through a back staircase, walked across the lobby, and exited the front door of the hotel in order to have the hotel doorman hail him a taxicab. *See id.* ¶ 12.

The plaintiff signaled to the hotel doorman that he wanted a taxicab and "tendered himself in a fit and proper state to be transported as a taxicab passenger." *Id.* ¶ 13. As defendant Johal dropped off a Caucasian passenger at the curb, the hotel doorman alerted the taxicab driver to the presence of the plaintiff by "tapping the side of the taxicab and telling the driver to stop so that the plaintiff could get in." *See id.* ¶¶ 12–14. According to the plaintiff, defendant Johal looked directly at him, "sized him up, and then began slowly to pull away from the curb." *Id.* ¶ 14. The doorman alerted defendant Johal twice of the plaintiff's desire to catch a taxicab, but defendant Johal "refused to stop … and intentionally refused to provide taxicab service to [the plaintiff]," allegedly "on the basis of the plaintiff's race, color, or personal appearance." *See id.* ¶¶ 14–15.

The plaintiff subsequently initiated the present action, demanding a jury trial, and asserting the following four causes of action against the defendants: (1) violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981 *et seq.*; (2) violation of the District of Columbia Human Rights Act, as amended, D.C.Code §§ 1–2519 *et seq.*; (3) breach of the common law common-carrier duty, and; (4) negligent supervision.[1] *See id.* ¶¶ 23–38. For his injuries, the plaintiff requests injunctive relief ordering the defendants to cease all racially discriminatory activity, an unspecified amount of compensatory and punitive damages, and attorneys' fees and costs. *See id.* at 10.

### B. Procedural History

On May 21, 2001, defendant Johal filed a motion to dismiss for failure to exhaust administrative remedies and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Def. Johal's Mot. to Dismiss. The court denied defendant Johal's motion, reasoning that the plaintiff need not exhaust his administrative reme-

---

1. The plaintiff asserts the fourth cause of action against defendant Amritsar only. *See* Compl. ¶¶ 2, 36–38.

dies with the D.C. Taxicab Commission before pursuing his claims in this court and that the plaintiff had sufficiently stated a claim upon which relief can be granted. *See* Mem.Op. and Order dated July 31, 2001. The court now turns to defendant Amritsar's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, wherein defendant Amritsar argues that it is not vicariously liable for the alleged act of discrimination committed by defendant Johal against the plaintiff. *See* Def.'s Mot. for Summ.J ("Def.'s Mot.") at 7–14.

### III. ANALYSIS

#### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *See id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *See id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *See Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

#### B. The Court Concludes That Defendant Amritsar is Subject to Liability for the Alleged Discrimination by Defendant Johal Against the Plaintiff

█ The plaintiff's claim against defendant Amritsar rests on the common law doctrine of *respondeat superior*. *See* Compl. ¶ 18; Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n") at 4–7. Under the doctrine of *respondeat superior*, an employer or "master" may be held liable for the wrongful acts and omissions of its employee or "servant." *See General Building Contractors Assoc., Inc. v. Pennsylvania*, 458 U.S. 375, 392, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (citing Restatement (Second) of Agency §§ 215–216 (1958); *W. Prosser &*

*W. Keaton, The Law of Torts* §§ 69–70 (1971)). In order to find an employer vicariously liable for an employee's acts, a court must first determine that an employer-employee, or "master-servant" relationship in fact exists. *See Dovell v. Arundel Supply Corp.*, 361 F.2d 543, 544 (D.C.Cir. 1966); *Safeway Stores, Inc. v. Kelly*, 448 A.2d 856, 860 (D.C.1982). In addition, the court must determine that the employee was acting within the scope of his employment at the time of the prohibited act. *See Jordan v. Medley*, 711 F.2d 211, 213 (D.C.Cir.1983).

■ Whether an employer-employee relationship exists is generally a question of fact. *See Dovell*, 361 F.2d at 544 (stating that the decisive test is "whether the employer has the right to control and direct the servant in the performance of both his work and in the manner in which the work is to be done"); *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.C.Cir.2001) (stating that "[f]acile labels and subjective factors . . . are only relevant to the extent that they mirror 'economic reality' ") (citations omitted). Under the relevant case law, however, defendant Amritsar is estopped from denying an employer-employee relationship with defendant Johal. *See Rhone v. Try Me Cab Co.*, 65 F.2d 834 (App.D.C.1933). Moreover, as explained later in this opinion, the court concludes that there is a genuine issue over whether defendant Johal was acting within the scope of his employment when the alleged discrimination took place. The court addresses these issues in turn.

### 1. An Employer–Employee Relationship Existed Between the Defendants

■ In support of defendant Amritsar's position that the plaintiff cannot hold defendant Amritsar vicariously liable for the alleged acts of defendant Johal, defendant Amritsar argues that no employer-employee relationship exists between the defendants. *See* Def.'s Mot. at 1–8. The D.C. Circuit, however, has created an exception to the *respondeat superior* requirement that a plaintiff must first prove the existence of an employer-employee relationship in the context of a taxicab company and the driver of a taxicab bearing the company's name. *See Rhone*, 65 F.2d 834.

In *Rhone*, the plaintiff brought a claim against the individual driver and the taxicab company for injuries she sustained as a result of alleged negligence by the driver. *See id.* The taxicab company asserted that the driver was an "independent contractor" and was thereby not subject to any management or control by the company. *See id.* The D.C. Circuit held that the taxicab company merely "furnish[ed] its members a telephone service and the advantages offered by use of the corporate name." *Id.* at 835. In fact, "the cab company apparently never owned any cab, nor anything else, beyond a chartered misnomer which it leased to cab drivers, and through which it called itself a cab company when in fact it was a cab calling company." *Id.* at 836. But the court also determined that "the cab was engaged in a public calling [as a common carrier], under the license of public authority," and that "at the time of the accident it bore the name of the company." *Id.* at 835–36. The court noted the prevalence of cabs in the District of Columbia "holding out to the public an illusion of incorporated responsibility which they do not possess," and expressed its concern that such an illusion belies the fact that each individual cab possesses no "financial responsibility [to its passengers] . . . beyond an equity of redemption in some used motor car." *See id.* Along this line of reasoning, the D.C. Circuit estopped the taxicab company from

denying liability for the driver's alleged negligence. *Id.* As stated more recently in a case that applied the D.C. Circuit's decision in *Rhone:*

> Under District of Columbia law governing taxicab companies, the absence of a traditional "employer-employee" relationship does not allow [the taxicab company] to avoid vicarious liability for its driver's actions.... Under *Rhone* and its progeny, the law in the District of Columbia is that a taxicab company is estopped as a matter of law to deny vicarious liability when one of its drivers injures a passenger and the taxicab, regardless of who owns it, bears the company's colors and markings.

*Floyd–Mayers v. American Cab Co.,* 732 F.Supp. 243, 244–45 (D.D.C.1990) (Richey, J.) (citing *Rhone,* 65 F.2d at 835–36).

■ The facts of the case at bar are analogous to the facts in *Rhone.* Here, the parties do not dispute that, at the time of the alleged incident, the taxicab that defendant Johal was driving bore the name and color scheme of "Your Way," a trade name of defendant Amritsar. *See* Def.'s Mot. at 5. Nor do the parties dispute that defendant Amritsar approved and authorized defendant Johal's use of the name and color scheme. *See* Pl.'s Opp'n at 6. In addition, the record demonstrates that the plaintiff sought taxicab service from defendant Johal. *See id.* at 2; Compl. ¶¶ 12–15.

■ Defendant Amritsar attempts to distinguish these facts from those in *Rhone* by arguing that *Rhone* does not apply to the present case because the plaintiff never became a taxicab passenger of defendant Johal. *See* Def.'s Mot. at 7. In support of its position, defendant Amritsar states that "at best, ... the hotel doorman attempted to facilitate the plaintiff in securing passenger status with the cab driver." *Id.* As a matter of law, however, "persons seeking taxicab service are accorded the same legal protections and are considered 'passengers' on the same terms as persons who actually secure taxicab service." *Floyd–Mayers,* 732 F.Supp. at 246.[2] Accordingly, following the principles in *Rhone* and other set precedent in this jurisdiction, the court estops defendant Amritsar from denying an employer-employee relationship between it and defendant Johal. *See Rhone,* 65 F.2d at 834; *Floyd–Mayers,* 732 F.Supp. at 243.

**2. There Exists a Triable Issue of Material Fact as to Whether Defendant Johal Was Acting Within the Scope of His Employment at the Time of the Alleged Discrimination**

The court may hold defendant Amritsar vicariously liable if defendant Johal was

---

2. Defendant Amritsar cites *Harlem Taxicab Assoc. v. Nemesh,* 191 F.2d 459 (D.C.Cir. 1951), to support its contention that the *Rhone* estoppel rule does not apply to the instant case. *See* Def.'s Mot. at 10. In *Nemesh,* the D.C. Circuit held that a taxicab bearing the name and color scheme of a taxicab company creates the presumption that it is owned or controlled by the company, but such a presumption could be rebutted by evidence to the contrary. *See id.* at 460. Unlike the facts in *Rhone,* however, the plaintiff in *Nemesh* was not a taxicab passenger and was injured as he tried to help a driver start a stalled taxicab. *See id.* As the concurring opinion in *Nemesh* observes, *Rhone* "rested upon a contractual relationship of the cab company to a passenger, whereas the present case involves a non-passenger." *Id.* at 462 (Proctor, J., concurring).

Defendant Amritsar also argues that because defendant Johal was off-duty at the time of the incident, no "passenger relationship" existed in order for the *Rhone* estoppel rule to apply. *See* Def.'s Reply at 6. The court addresses this fact-specific inquiry in the next passage of this opinion in consideration of whether defendant Johal was acting within the scope of his employment in relation to defendant Amritsar when he allegedly discriminated against the plaintiff. *See infra,* III.B.2.

acting within the scope of his employment when he refused to pick up the plaintiff. *See Floyd–Mayers,* 732 F.Supp. at 246; *Bolden v. J & R, Inc.,* 2001 U.S.Dist. LEXIS 3231, *9, —— WL ——, *—— (D.D.C.2001) (Kessler, J.) (holding the corporate defendant liable where the individual defendant was acting within the scope of his employment). In addition, whether or not an employee's act is within the scope of his or her employment is generally a question of fact to be determined by a jury. *See Jordan,* 711 F.2d at 213. As stated earlier, however, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Defendant Amritsar argues that no genuine issue of material· fact exists and that it is therefore entitled to summary judgment as a matter of law. *See* Def.'s Reply at 4–5. The court disagrees.

In support of its position, defendant Amritsar asserts that defendant Johal was already off-duty at the time when he refused to pick up the plaintiff and was therefore not acting within the scope of his employment—a necessary fact to impute liability to defendant Amritsar. *See Floyd–Mayers,* 732 F.Supp. at 246; Def.'s Reply at 2–5. Defendant Johal testified at his deposition that at the time the plaintiff tried to hail his taxicab, defendant Johal had already decided to return home after working beyond his usual working hours on a Sunday evening. *See* Def.'s Reply at 2–3. Defendant Johal explained that he began work at about four o'clock on that particular Sunday evening. *See id.* Defendant Johal further confirmed that he does not work late on Sunday evenings because he must rise early on Monday

mornings to take his children to school. *See id.* He claims that the only reason he was working late that Sunday was because of the long and slow-moving line of taxicabs waiting for fares at the airport, and that his intention was to pick up his last fare at the airport before returning home that evening. *See id.* at 3. Defendant Johal also claims that after he dropped off his fare at the hotel where the plaintiff was waiting, defendant Johal locked his doors and turned on his taxicab's "off duty" sign. *See id.* In sum, defendant Johal asserts that his cab was no longer available for hire at the time the plaintiff attempted to procure a ride from defendant Johal. *See id.* Moreover, at defendant Amritsar's deposition of the plaintiff, the plaintiff "acknowledged [that] a taxicab [driver] was entitled to determine the hours he would work and when he would cease work." Def.'s Reply at 4. Accordingly, defendant Amritsar asserts that it has "met its burden of demonstrating an absence of genuine issues of material fact" and that it is entitled to summary judgment as a matter of law. *See* Def.'s Reply at 5.

■ The burden on the party moving for summary judgment "may be discharged by showing ... an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. When ruling on a motion for summary judgment, however, the court must also draw all justifiable inferences in the nonmoving party's favor. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. In other words, this court must draw all justifiable inference in the plaintiff's favor. Here, the crux of the plaintiff's racial-discrimination claim is that defendant Johal "looked directly at [him], sized him up for a few seconds, and then began slowly to pull away from the curb." Pl.'s Opp'n at 2. The plaintiff's underlying argument is that even though defendant Johal has the right

to determine his own working hours, such a decision may not be motivated by racial discrimination. Simply put, if defendant Johal decided to stop working because he did not want to carry the plaintiff because of the plaintiff's race, then defendant Johal was not "off duty" as a matter of law. Under such circumstances, defendant Johal's conduct would constitute racial discrimination while engaged within the scope of his employment. *See Floyd–Mayers,* 732 F.Supp. at 244.

Although counsel for the plaintiff fails to raise the argument explicitly, the plaintiff's claim against defendant Amritsar necessarily requires that defendant Johal was on-duty at the time of the alleged discrimination, and thereby raises a dispute over a genuine issue of material fact. While the nonmoving party may not rely solely on allegations or conclusory statements in order to challenge summary judgment, *see Greene,* 164 F.3d at 675, the court is nevertheless mindful that in racial discrimination claims, a "fact-finder could infer intentional discrimination even in the absence of crystal-clear documentary evidence filed at the summary judgment stage." *See Aka v. Washington Hosp. Ctr.,* 116 F.3d 876, 879, *rev'd en banc on other grounds,* 156 F.3d 1284 (D.C.Cir.1998) (holding that courts should view summary judgment motions in discrimination cases with special caution).

In the instant case, beyond the plaintiff's allegations in his complaint, the plaintiff's initial disclosure ("Pl.'s Discl.") filed pursuant to Federal Rule of Civil Procedure 26 lists a "Mr. Ron Claibon" of the Capitol Hilton hotel as a "witness to the incident of racial discrimination" at issue. *See* Pl.'s Discl. ¶ 1. A motion for summary judgment "does not require the nonmoving party to depose her own witness." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. In addition, "Rule 56(e) permits a proper summary

judgment motion to be opposed by any of the kinds of evidentiary materials ... except the mere pleadings themselves." *Id.* Indeed, where the record reveals that the moving party has "overlooked a witness who would provide relevant testimony for the nonmoving party at trial," the court can not find that the moving party has "discharged its initial burden of production unless the moving party sought to demonstrate the inadequacy of this witness' testimony." *Id.* at 328, 332–33, 106 S.Ct. 2548 (White, J., concurring) (reasoning that if a plaintiff "has named a witness to support her claim, summary judgment should not be granted without ... [the defendant] showing that the named witness' possible testimony raises no genuine issue of material fact") (Brennan, J., Burger, C.J., Blackmun, J., dissenting in judgment) (stating that "if the record disclosed that the moving party had overlooked a witness who would provide relevant testimony for the nonmoving party at trial, the court could not find that the moving party had discharged its initial burden of production unless the moving party sought to demonstrate the inadequacy of this witness' testimony"). In addition, any doubt as to the existence of a genuine issue for trial should be resolved against the moving party. *See id.* (citations omitted).

In sum, the court concludes that the question of whether defendant Johal was acting within the scope of his employment at the time of the alleged discriminatory act raises a genuine issue of material fact that should be resolved by the trier of fact. Accordingly, the court denies defendant Amritsar's motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the court denies defendant Amritsar's motion for summary judgment. An order consistent with this Memorandum Opinion is separately

and contemporaneously issued this _____ day of June 2002.