H. T. CAB COMPANY et al., Appellants,

v.

Lee GINNS, Appellee.

No. 12827.

Court of Civil Appeals of Texas.

Galveston.

May 26, 1955.

Rehearing Denied June 16, 1955.

Dotson, McFarland & Roche, Gordon A. Dotson and Norman R. McFarland, Houston, for appellants.

Stanley F. Swenson, Houston, for appellee.

CODY, Justice.

This suit was originally brought by Lee Ginns on July 28, 1950, to recover damages sustained by him resulting from a gunshot wound inflicted on him by James Melvin Jones on May 7, 1950. The original plaintiff brought his action against the said Jones and also against the H. T. Cab Company and the Taylor Company. In his original petition Lee Ginns alleged that the H. T. Cab Company was engaged in operating taxicabs in the City of Houston under a license issued to it for that purpose, and so a common carrier of passengers for hire at all material times. He alleged that on the

date he was so wounded he took a taxicab which was operated by the said Jones under the authority of H. T. Cab Company and notified Jones where he wished to go, and was accepted as a passenger and it then and there became the duty of the H. T. Cab Company to exercise the degree of care toward him due from a common carrier of passengers to a passenger; that when plaintiff arrived at his destination he attempted to pay Jones the proper fare but that Jones became infuriated with plaintiff as to the amount of fare tendered in payment (it being 15 cents less than Jones demanded) and Jones threw the tendered fare away and shot plaintiff in the mouth, inflicting the gunshot wound for which damages were sought.

Plaintiff further alleged that the taxicab had printed thereon in large letters "H. T. Cab Company"; and further alleged that Jones was a driver of H. T. Cab Company operating under the license issued to said company by the City of Houston and that in any event H. T. Cab Company, by its acts, held out that Jones was its driver and acting in the course of his employment and that the H. T. Cab Company was estopped to claim otherwise.

Plaintiff further alleged that the H. T. Cab Company and the Taylor Company were incorporated by Hobart Taylor about the same time and have the same office address and the same officers and directors; and further that said corporations formed a part of a set-up, or a subterfuge, by which the H. T. Cab Company and the Taylor Company sought to avoid liability for any torts committed in the course of operating the taxicab business in the City of Houston; that under the scheme the title to the taxicabs was placed in the name of the Taylor Company, etc.—The facts concerning the relationship between the Taylor Company and the H. T. Cab Company and Jones, the driver, as the same are claimed to be by the defendants, will hereafter be set forth.

The defendants, including Jones, filed a common answer. Therein they alleged that no relationship of master and servant, employer and employee, or principal and agent,

existed at any material time between Jones and his two codefendants. In the alternative the defendants plead that Jones was not acting for his codefendants nor in the furtherance of the business of either, etc.

After the suit had been filed in July, 1950, the original plaintiff died, about November 10th of 1950. It is undisputed that his death did not result from the gunshot wound in question. Some two and one-half years thereafter the original plaintiff's surviving wife suggested his death to the court and obtained leave to substitute for the original plaintiff and to represent the two minor children of herself and the deceased original plaintiff, and the surviving wife alleged that no administration had been taken out and none was necessary, and the court, in an interlocutory proceeding, which the defendants have stigmatized as ex parte, found as a fact that no administration had been taken out and that none was necessary. At the conclusion of the evidence the defendants moved for a directed verdict and, in the alternative, moved that at least the two corporate defendants be granted a directed verdict. The court granted the motion so far as the Taylor Company was concerned, but otherwise denied the motion, and submitted the case to the jury upon the special issues, which were answered as follows: (1) that the defendant Jones on or about May 7, 1950, shot and wounded Lee Ginns, (2) that at that time and on that occasion Jones was an agent or employee of H. T. Cab Company, (3) that Jones in shooting said Lee Ginns "if you have found that he did shoot him" was acting in the course and scope of his employment or agency for H. T. Cab Company, (4) that such action on the part of Jones was not a deviation from the course and scope of his employment or agency, if any, by H. T. Cab Company.

No complaint has been raised as to the amount of damages found by the jury which amounted to $6,765, for which sum the court rendered judgment against H. T. Cab Company and Jones. The court overruled defendants' motion, both for judgment non obstante veredicto, and alternatively to

disregard certain jury findings, and granted the motion of plaintiffs for judgment on the verdict.

Defendants, as appellants, have predicated their appeal upon eleven formal points. Their points 1, 2, 3, 4, 8 and 9 in substance complain that the court erroneously found that there was no necessity for administration on the plaintiff's estate, and erroneously permitted the suit to be tried by the substitute plaintiffs. We overrule said points.

■ There was evidence upon the trial, indeed the surviving wife herself testified, that certain debts existed at the time Lee Ginns died intestate. The first time appellants complain that appellees were without authority to be substituted as plaintiffs and to prosecute the suit, was in their motion for a directed verdict. We deem it unnecessary to answer the contentions made under appellants' various points attacking the authority of appellees to proceed with the trial of the suit on the alleged grounds that the evidence established as a matter of law that there was a necessity for administration on the estate of the deceased Ginns for this reason: Under our community property system damages which are recoverable for an injury to the husband are the common property of the husband and wife. Texas & Pacific Railway Co. v. Bailey, 83 Tex. 19, 23, 18 S.W. 481; Missouri, K. & T. Ry. Co. of Texas v. Groseclose, Tex.Civ.App., 134 S.W. 736, 739 (writ denied). As the surviving wife of Lee Ginns, Mrs. Ginns was authorized to bring suit to recover on community claims without any necessity of alleging that there was no administration on her deceased husband's estate and that none was necessary. See the Groseclose case just cited. And, it was not reversible error for the children to be joined with Mrs. Ginns as plaintiffs in the suit. Id.

In their points 5, 6, 7, 10 and 11, appellants complain of (a) the court's refusal to direct a verdict for the Cab Company based upon the evidence that Jones was an independent contractor, and complain of (b) the court's submission of special issue No. 2, and also of (c) the submission of special issue No. 3. Appellants' remaining points are but repetitions of the contention that there was insufficient evidence to support an affirmative finding of agency on the part of Jones, or to support the finding that Jones was acting in the scope of his employment or agency for the Cab Company when he shot Ginns.

■ Appellants' aforesaid points are overruled. Hobart Taylor, the owner of the Taylor Company and of the H. T. Cab Company, testified at length. We have carefully read all of his testimony and do not consider appellee's characterization of it as evasive as too harsh. However, though the jury were entitled to disregard such testimony or such portions of it as they might choose, they were not entitled to consider such testimony as establishing the opposite of what he testified to. According to Taylor's testimony, the manner of the operation of his two corporations and of the drivers of the taxicabs was as follows:

The titles to the taxicabs were taken in the name of the Taylor Company, and said company then leased a specified taxicab to a specified driver under a purchase agreement. The H. T. Cab Company ran a dispatch service for the drivers, and had some twelve or more stands in the City of Houston. Each driver paid to the H. T. Cab Company $35 a week regardless of the amount of money that he took in, and such driver owned the fares he collected, and did not account to anybody therefor. Each driver also kept his taxicab at home when not in use. He worked only when he wanted to. He further testified that the H. T. Cab Company was always losing money, that he operated at a loss because his "boys" were such fine fellows.

It was not clear just how the taxicabs were paid for, that is, whether they were paid for out of the $35 per week which went to the Cab Company for its dispatching service, or whether the payment was made to the Taylor Company, and how much was paid. As we read the testimony

at one place he testified that a taxicab had been sold to Jones for $1,800, and at another place that the same had been sold to him for $2,700. In any case, since February, 1950, up until the time of the trial, Jones had had two taxicabs. The first had been wrecked and had not been paid out, and the second had not been paid out. His testimony was that his drivers were not bothered by him about making payments.

He testified that the City required that the taxicabs, which were driven under the license issued to H. T. Cab Company, have printed on their sides "H. T. Cab Company."

It is obvious that the designer of the system under which the taxicabs which operate under the name of H. T. Cab Company intended to set up a system whereby each driver occupied the status of an independent contractor. This is not the first time this, or similar set-ups have been tried out. The case of Rhone v. Try Me Cab Co., 62 App.D.C. 201, 65 F.2d 834, was one in which the cab company tried to deny liability to an injured passenger based on the contention that the driver was an independent contractor, and solely liable for the negligence which resulted in the passenger's injury. In that case the cab company claimed that it was a non-profit-sharing corporation and existed only for the purpose of furnishing its members a telephone service and the advantages offered by the use of its corporate name, but itself owned no cabs. In the cited case the trial court accepted the façade or structure which had been set up to make the drivers out to be independent contractors, and directed a verdict against the injured plaintiff. But on appeal, the court found that the taxicab in question was engaged in a public calling under license of public authority issued upon the joint application of the cab company and the owner of the cab involved, and that at the time of the accident the cab bore the name of the company, and was sent by the company in response to an application made for a cab. The court held that the cab was made available by the owner of the cab under a public license.

and "upon this showing we are of the opinion that the company and Jackson (who was the owner, but not the driver of the cab) are estopped to deny liability to a passenger so induced to employ the cab and injured by the negligence of the driver sent to operate it." (Authorities.) See also Callas v. Independent Taxi Owners' Ass'n, Inc., 62 App.D.C. 212, 66 F.2d 192, 194. In the last cited case the court held that the name upon the side of the cab raised the presumption of ownership in the company. " 'This was sufficient to establish, not only a prima facies that the defendants were the owners of the truck, but also that it was then in charge of their servant or employee. This was presumptive evidence, and, as has frequently been ruled, was quite sufficient to carry the case to the jury.' "

The case of Martin v. Weaver, Tex.Civ. App., El Paso, 161 S.W.2d 812, presented a case in which the company did not own the taxicabs but it also furnished a dispatch service for a fixed sum per day from each driver, and the company's name appeared upon the cabs and upon the caps of each driver. The court held that the parties were engaged in a joint venture of the transportation of passengers for hire and were responsible for acts performed within the scope of the enterprise. See also Boyett v. Galey, Tex.Civ.App., 254 S.W.2d 807. See also Meridian Taxicab Co. v. Ward, 184 Miss. 499, 186 So. 636, 120 A. L.R. 1346; and Rice v. Marler, 107 Colo. 57, 108 P.2d 868.

■ There is here abundant evidence to fix liability on the cab company. The only question is did appellees adopt the correct theory to fix such liability?

■ Ordinarily the presumption which would arise from the name of H. T. Cab Company on the sides of the cab that same belonged to said company, and that Jones was its employee, would be overcome by testimony to the effect that the cab did not belong to said company, and that Jones owned it, and did not work for said company. But testimony which a jury has

rejected is the same as no testimony. The most that the testimony of the witnesses for appellants could do would be to raise a fact issue. That would not destroy the aforesaid presumption if said evidence was not believed. It is evident that the jury did not credit appellants' evidence.

Ginns was transported to his destination under the terms of an oral contract which included the provision that he should pay the fare at the termination of the contract of carriage. It was the right of Jones, under such contract, to collect a proper fare. The fact that Ginns had safely alighted at his destination did not terminate the contract of carriage, and did not terminate the relationship of carrier-passenger. Jones was therefore acting in the course and scope of his employment in undertaking to collect a fare from Ginns, and during the existence of the carrier-passenger relationship. We do not question that in shooting Ginns, Jones was humoring his own spite. That does not change the fact that the trouble arose out of collecting a fare, and during the carrier-passenger relationship.

Judgment affirmed.