**Q. W. McCORD, Appellant,**

v.

**SOUTHERN DISTRIBUTING COMPANY,**
Appellee.

**No. 10947.**

Court of Civil Appeals of Texas.

Austin.

April 4, 1962.

Milburn, Bell, Knight & Barnes, Odessa, for appellant.

Gay & Meyers, Clark, Thomas, Harris, Denius & Winters, John Coates, Austin, for appellee.

HUGHES, Justice.

The principal question presented by this appeal, and the only one determined by us, is whether or not Alfred F. Schmidt, an employee of appellee Southern Distributing Company, was acting within the scope of his employment when he assaulted appellant, Q. W. McCord. It is our opinion, under the authority of Texas & Pacific Ry. Co. v. Hagenloh, 151 Tex. 191, 247 S.W.2d 236, that he was not so acting, and that the judgment of the Trial Court should be affirmed.

The suit was against the employee, Schmidt, and his employer, Southern Distributing Company. Trial was to a jury which found that Schmidt was acting within the scope of his employment when he assaulted appellee, and that the resultant damages were $7,000.00. On respective motions, judgment was rendered against Schmidt on the verdict and for appellee notwithstanding the verdict. Schmidt did not appeal.

Southern Distributing Company was the dealer for Falstaff beer in Travis County.

Appellant operated a package store in Austin where he sold liquor and beers.

Schmidt was employed by appellee as its "good will man," sometimes called its "contact man." His duties were to go out in the trade and create good will. This was sought to be accomplished by visiting taverns, buying Falstaff beer for its patrons, and by calling on package stores. It was also Schmidt's duty to place advertising in taverns and stores.

Schmidt had been informed that the Falstaff sign in appellant's package store had been removed and he undertook to have it restored.

On the day of the assault there was a meeting at Pioneer Drive Inn, in Austin, of people interested in the outcome of a pending wet-dry election. If the drys won, appellant's package store would have been closed. He attended this meeting, as did Schmidt. When the meeting was over, Schmidt approached appellant and suggested that they go to the nearby Split Rail, another tavern, for another beer. They went, and while there Schmidt brought up, with McCord, the matter of the sign, Schmidt testifying: "and we ordered a beer and had it, and things were going along pretty good, and I just asked him, thought it would be a nice time to step in and maybe he was in good spirits, and I might catch him off balance, or something, and he would let me put my sign back in there which, I mean, you always try."

Appellant refused to agree to replace the sign, and testified in this regard:

"A  Mr. Schmidt told me that he wanted to put the signs back in the store and the displays in the window, and I told him I'd rather not. Then he got loud about it, and wanted to know why, and I told him why—that he had his favored ones,—to put them in his favored retailer's place and it would be perfectly all right with me.

"Q  Did anybody get mad at anybody over there at that time?

"A  I wasn't mad. He didn't seem to be mad about it. He talked a little loud about it.

"Q  Did you finish that beer and have another beer with him?

"A  Yes, sir.

"Q  Following that, what did you do?

"A  Well, every once in a while he would say something about it,—whether I was going to let him put this sign in or any displays, and I said 'No.' Well, he says, 'I am going to take it,' and I said, 'Well, if you do, you will have to take it.'"

By "favored ones," appellant meant that appellee was selling beer to his competitors cheaper than to appellant. This accusation was denied by Schmidt, and the evidence is in dispute as to whether or not appellant called Schmidt a liar in this connection. The implication, however, that Schmidt was not telling the truth was plainly made by appellant.

After about an hour at the Split Rail, Schmidt asked appellant to take him in his car back to the Pioneer. The unsettled argument about the sign was renewed while in the car. We quote appellant:

"Q  Did the discussion continue as you rode back to the Pioneer?

"A  It didn't start until we got almost to that last light within about a half block of Pioneer.

"Q  And do you remember what was said then—how did it start up?

"A  He said, 'Well, you are not going to let me have this display?'

"Q  Then what did you say?

"A  I said, 'No, absolutely.'

"Q  And did you tell him again why you would not?

"A  I told him again, as I have told you before—'No.'

"Q  Did you say, 'No; give that to one of your favorites'?

"A  Yes, I did.

"Q Did he reply to that?

"A Yes, sir.

"Q What did he say?

"A He told me that he was going to whip me."

Appellant did not take the whipping threat seriously. When the car reached the Pioneer and stopped Schmidt got out of the car, went to appellant's side of the car, opened the door, and assaulted him.

Neither Schmidt nor appellant was intoxicated.

■ Our decision is based solely on the ground that Schmidt in the performance of his duties as appellee's employee was not authorized to use any degree of force in their performance. This, the use of force, we understand to be an essential requirement of liability of an employer for an assault by an employee, even though the employee at the time of the assault was engaged in furthering the business of his employer. Hagenloh, supra. In that case a special agent, Houghland, for the railroad, assaulted a baggageman, Hagenloh, for the road whom he suspected of theft. The assault occurred off the railroad property and when the baggageman was not on duty. We quote from the opinion the circumstances of the assault: "When he (Hagenloh) was walking up the street or road after leaving the cafe and had reached a point about forty feet north of the railroad tracks, he heard someone call him. He stopped, and Houghland came to him and said: 'I want to talk to you about the baggage incident.' Respondent said: 'I don't think that this is the place to talk about it. I would like to have an investigation, which I have asked for, and probably will get.' Then in the words of respondent's testimony the following: 'He said "I don't need an investigation. I have made up my mind to find out right now, right here, right now." He said "you are a thief and you belong in the penitentiary." and I said—I don't remember just the exact words, I said "well, how come?" And he

said "Judge Schmidt told me." And I said "that is a lie." With that, as I was talking to him, had started around and trying to walk in the same direction I had originally started, turned away from him and when I said "that is a lie", he hauled out and hit me with his right hand.' "

In holding that the railroad company was not liable for the assault by its special agent the Court stated:

"The nature of the employment may be such as necessarily to involve at times the use of force, as where the employee's duty is to guard the employer's property and to protect it from trespassers, so that the act of using force may be in furtherance of the employer's business, making him liable even when greater force is used than is necessary. * * *

"In this case the evidence is that Houghland was a special agent of petitioner, whose duties were to protect petitioner's property, investigate trespassers, claims for damages, and for missing baggage or other property and undertake to find missing property. In his acts in relation to respondent Houghland was not engaged in protecting the railway company's property from trespass or otherwise. He was investigating for the purpose of finding property missing from baggage. His duties in that respect were not of such nature as to involve the use of force, and there is no evidence in the record tending to prove that he was authorized to use force in the performance of those duties. *And so it seems that in this respect respondent failed to prove a fact essential to recovery by him against petitioner.*" (Italics ours.)

There was a dissenting opinion in Hagenloh by Associate Justice Smith, joined by Associate Justice Sharp and Associate Justice, now Chief Justice Calvert, in which it was stated:

"We understand the majority opinion to say, in effect, that an employer can

never be liable for an assault and battery committed by his employee unless the employee acts pursuant to an authority, general or limited, which permits the use of physical force to some degree. Consequently, Houghland could not, in the majority's view, have been acting within his general investigative authority because the majority found 'no evidence' that he was authorized to use physical force against persons in obtaining information for the company."

We agree with this appraisal of the majority opinion by the dissenting Justices.

There is no evidence in this case that Schmidt was authorized to use force in the performance of his duties as "good will man" for appellee. His title refutes the idea.

Appellant relies, principally, upon the cases of Houston Transit Co. v. Felder, 146 Tex. 428, 208 S.W.2d 880 and H. T. Cab Company v. Ginns, 280 S.W.2d 360, Galveston Texas Civil Appeals, writ ref., N.R.E.

The Houston Transit case was prior to Hagenloh and was discussed by the Court in that case. As stated by Justice Smith in the dissent in Hagenloh, "The most impressive negation of the idea that there must be some authority to use force before an assault and battery can be within the scope of authority is Houston Transit Co. v. Felder (cited above). There is no indication whatever in that case that the bus driver was authorized to use any amount of force in obtaining information about the collision." The bus driver there hit the driver of a car which had collided with the bus when such driver failed to give the bus driver desired information.

If the persuasive dissent in Hagenloh could not dissuade the majority from declaring its "rule of force," it would be presumptuous for us to attempt it. We follow Hagenloh and its "rule of force."

The H. T. Cab case is subsequent to both of the Supreme Court cases above mentioned, but does not cite either of them. It was a case of a cab driver shooting his passenger to collect a fare. The employer of the cab driver was held liable. We do not know upon what ground the Supreme Court approved the judgment in that case. Maybe the cab driver had the right to use force in collecting his fares.

The judgment is affirmed.

Affirmed.