Sherry John DURAND, Jr., d/b/a Desiree, Appellant,

v.

Michael L. MOORE, Appellee.

No. B14–92–01160–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 12, 1994.

Rehearing Denied July 21, 1994.

198

W. Troy McKinney, Houston, for appellant.

Nicholas Lanza, Houston, for appellee.

Before SEARS, LEE and JUNELL, JJ. (sitting by designation).

## MAJORITY OPINION

WILLIAM E. JUNELL, Justice (Retired).

This is a *respondeat superior* case. The employer, Sherry John Durand, Jr., d/b/a Desiree, ("Durand") was held liable for the acts of his employee, Craig Lewis. Lewis was a doorman at Durand's nightclub when he assaulted a customer waiting to enter the club. Durand complains that Lewis was not acting in the course and scope of his employment when the assault occurred and that punitive damages were unjustified. We affirm in part, reverse in part.

Desiree is a Houston nightclub, owned and operated by Durand. On April 19, 1991, Craig Lewis, an employee of Durand, was assigned to the front door of the club. His job included checking IDs, enforcing the dress code, and coordinating the admission of customers into the club.

That night or early morning April 20, Michael Moore and Lawrence Ward went to the club. The club was filled to capacity, and both men waited in line for customers to leave. However, doorman Lewis did not admit customers into the club in waiting-line order. Instead, he selected several persons from the line behind Moore and Ward. Ward, and then Moore, left the line and complained to Lewis. Ward turned away and walked toward his car, but Moore remained and continued the discussion with Lewis. There was conflicting testimony

whether Moore and Ward were loud and abusive and whether Durand personally quieted them down just before the assault.

Without provocation, Lewis grabbed a tall cocktail glass filled with a drink and struck Moore on the side of the head shattering the glass. While Moore struggled to restrain Lewis and ward off further attack, Lewis struck Moore several more times with a flashlight. Ward returned and attempted to break up the struggle, but Lewis struck him in the face with the flashlight, breaking Ward's nose. Ward retreated as Durand and others pulled Lewis and Moore apart.

Ward called the police. An ambulance arrived, and Moore and Ward received first-aid. Ward was later treated at a hospital. Moore declined treatment.

Moore sued Durand and Lewis. Lewis defaulted. After a bench trial, the court found Durand liable under *respondeat superior.* The court awarded Moore $2,500 in actual damages and $7,500 in punitives. Findings of fact and conclusions of law were requested and filed. Durand appeals. Lewis is not a party to the appeal.

### I. Course & Scope of Employment

In points of error one and three, Durand complains that the evidence was *legally* insufficient to support the trial court's finding that Lewis was acting within the course and scope of his employment for Durand at the time Lewis assaulted Moore.

■ In reviewing a no-evidence point, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *See id.* "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem Inc.,* 650 S.W.2d 61, 63 (Tex.1983).

■ In general, to impose liability upon an employer for the tort of his employee under the doctrine of *respondeat superior,* the act of the employee must fall within the scope of the general authority of the employee in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired. *Andrews v. Houston Lighting and Power,* 820 S.W.2d 411, 413 (Tex.App.—Houston [14th Dist.] 1991, writ denied). An employee's tortious conduct will be found to be within the scope of employment when the tortious conduct is of the same general nature as that authorized or incidental to the conduct authorized. *Smith v. M System Food Stores,* 156 Tex. 484, 297 S.W.2d 112, 114 (1957). An employer will be held liable for the act of his employee, even if the act is contrary to express orders, if it is done within the general authority of the employee. *J.V. Harrison Truck Lines v. Larson,* 663 S.W.2d 37, 40 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.).

■ When an employee commits an assault, it is for the trier of fact to determine whether the employee ceased to act as an employee and acted instead upon his own responsibility. *Houston Transit Co. v. Felder,* 208 S.W.2d 880, 882 (Tex.1948). In *Houston Transit,* after an auto accident between a bus and car, the bus driver started an argument with the motorist while the bus driver was getting information from the motorist. The bus driver subsequently struck the motorist in the face with a money-change box. The Court refused to hold as a matter of law that the employee's assault was not in the course and scope of his employment. Rather, the Court said that the issue was for the trier of fact. The Court reasoned that if an assault is so connected with and immediately grows out of another act of the employee, imputable to the employer, then both acts may be treated as being one indivisible tort. *Id.* at 881.

Subsequent to *Felder,* the Court clarified the law regarding the use of assaultive force by an employee:

> It is not ordinarily within the scope of a servant's authority to commit an assault on a third person.... And the cases in which liability has been imposed upon the master for assault by his servant are com-

paratively few. Usually assault is the expression of personal animosity and is not for the purpose of carrying out the master's business.

*Texas & Pac. Ry. v. Hagenloh,* 151 Tex. 191, 247 S.W.2d 236, 239 (1952).

[W]hen the servant turns aside, for however short a time, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone.

*Id.* at 241, quoting *Galveston, H. & S.A. Ry. v. Currie,* 100 Tex. 136, 96 S.W. 1073, 1074 (1906).

However, the *Hagenloh* Court explained when an assault could be deemed within the course and scope of employment:

The nature of the employment may be such as necessarily to involve at times the use of force as where the employee's duty is to guard the employer's property and to protect it from trespassers so that the act of using force may be in furtherance of the employer's business, making him liable even when greater force is used than is necessary.

*Id.* at 239.

The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business or the care of his property, is justly held responsible when the servant *through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion,* goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury on a third person.

*Id.* at 244–45 (Smith, J., dissenting), quoting 39 C.J. *Master & Servant* § 1476 (1925) (emphasis added).

Viewing the evidence in the light most favorable to the finding, there was evidence that Lewis had the responsibility to control the admittance of customers into the club. There was evidence that Lewis admitted, ahead of Moore and Ward, two spendthrift customers who had "paid the light bill last month." Lewis' assault of Moore immediately followed their discussion of why Lewis was giving preferential treatment to certain customers. We find that this evidence was probative that Lewis' assault of Moore was overzealous enforcement of the criteria and procedures used to select waiting customers for admittance into the club. Since there was some evidence to support the trial court's finding, we overrule points one and three.

In points two and four, Durand complains that the evidence was *factually* insufficient to support the trial court's finding that Lewis was acting within the course and scope of his employment.

 In a factually sufficiency review, we consider and weigh all the evidence and uphold the finding unless the evidence is so weak, or the finding so against the great weight and preponderance of the evidence, so as to make the outcome manifestly erroneous or unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). We will not substitute our opinion for that of the trier of fact merely because we might have reached a different conclusion. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796 (1951). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See id.*

 Under points one and three, we surveyed the evidence supporting the trial court's finding that Lewis was acting within the course and scope of his employment. We now summarize the contrary evidence. Durand testified that Lewis was not authorized to fight, but rather, was to call Durand if trouble occurred at the door. Durand averred that, prior to the assault of Moore, there had never been a fight at the club in the two years of Durand's ownership. There was evidence that Lewis became upset and angry at Moore and Ward's challenge to his authority suggesting that Lewis acted out of personal animosity.

Considering all of the evidence, we cannot say that the evidence in support of the trial court's finding was so weak as to result in a manifestly unfair or unjust judgment.

This is not a case like *Kendall v. Whataburger, Inc.,* 759 S.W.2d 751 (Tex.App.— Houston [1st Dist.] 1988, no writ), where a

food service employee struck a complaining customer with hot grease and a french-fry basket. In *Kendall,* the court found, as a matter of law, that the assault "could not possibly have been so connected with and immediately arising out of [the employee's] job of taking food orders, and preparing and delivering food orders to customers, that his authorized employment tasks and the assault could have merged into one indivisible tort, imputable to the master." *Id.* at 755. In the present case, there was sufficient evidence connecting Lewis' assault to his enforcement of the manner of selection of customers for entry into the club.

Nor is this a case like *Dart v. Yellow Cab, Inc.,* 401 S.W.2d 874 (Tex.Civ.App.—Amarillo 1966, writ ref'd n.r.e.), where a cabdriver assaulted a passenger over an unpaid fare. In *Dart,* there was clear evidence of a departure by the cabdriver from his assigned duties. The cabdriver admitted that, "Well, you don't collect a fare by beating men up." He further stated that, "That wasn't what I hit the man for, on account of the money." He testified that, "I lost my temper, is how come me [sic] to hit that man." *Id.* at 877. In the present case, there is no such admission of Lewis' state of mind.

Finally, this is not a case where an assault by an employee is traced to a remote cause unrelated to the business of the employer. *See, e.g., Viking v. Circle K Convenience Stores,* 742 S.W.2d 732, 734 (Tex.App.—Houston [1st Dist.] 1987, writ denied) (not in course and scope of employment for an employee to leave the store unattended and unsecured and follow victim into a public street to shoot him over personal concern arising out of damage to employee's car); *Green v. Jackson,* 674 S.W.2d 395, 399 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.) (not in course and scope when employee fought with customer over a long-simmering and rancorous personal animosity arising out of an alleged personal debt); *Tierra Drilling Corp. v. Detmar,* 666 S.W.2d 661, 662 (Tex.App.—Corpus Christi 1984, no writ) (not in course and scope for supervisor to assault employee over supervisor's dislike of Texans); *Rosales v. American Buslines,* 598 S.W.2d 706, 709 (Tex.Civ.App.—El Paso 1980, writ ref'd

n.r.e.) (not in course and scope when assault based on grudge arising several weeks earlier); *McCord v. Southern Distrib. Co.,* 356 S.W.2d 350, 353 (Tex.Civ.App.—Austin 1962, no writ) (not in course of employment for "good will man" to assault customer; his very title refutes any inference that he was authorized to use force in the performance of his duties); *and M System Food Stores,* 297 S.W.2d at 114 (not in course and scope when only connection between plaintiff's alleged unlawful arrest and the lawful arrest of a shoplifter was that the two occurred somewhat contemporaneously).

This case is closer to *Frito–Lay, Inc. v. Ramos,* 770 S.W.2d 887 (Tex.App.—El Paso 1989), *rev'd on other grounds,* 784 S.W.2d 667 (1990), *Fisher v. Carrousel Motor Hotel, Inc.,* 424 S.W.2d 627 (Tex.1967), and *H.T. Cab Co. v. Ginns,* 280 S.W.2d 360 (Tex.Civ. App.—Galveston 1955, writ ref'd n.r.e.). In *Ramos,* a snack company employee shoved a customer while attempting to take the company's merchandise rack from the customer's store after customer informed the employee that he no longer wanted to carry the company's snack products. The court held that it was not against the great weight of the evidence for the fact finder to find that the employee was acting within the scope of his employment when he assaulted the customer while trying to retrieve company property. *Ramos, supra* at 889. In *Fisher,* the manager of a motel refused to allow a black man to eat at the motel restaurant. The Court held that the manager was acting in the course and scope of his employment in that he was enforcing his employer's discriminatory rules. *Fisher, supra* at 631. In *H.T. Cab,* a cabdriver shot a passenger over an unpaid fare. In holding that the shooting was within the course and scope of the cabbie's employment, the court stated that even though the cabdriver was "humoring his own spite," the trouble arose out of collecting a fare. *H.T. Cab, supra* at 365.

In sum, we find that there was factually sufficient evidence for the trial court to find that Lewis' assault of Moore was within the course and scope of his employment. We overrule points two and four.

## II. Punitive Damages

### A. Willful or Malicious Conduct

In point five, Durand argues that the trial court erred in awarding punitive damages because there was no fact finding that Lewis acted willfully or maliciously.

■ Punitive damages can be awarded when a tort is committed willfully or maliciously. *See Williams v. Lavender*, 797 S.W.2d 410, 412 (Tex.App.—Fort Worth 1990, writ denied). And an employer can be liable for punitive damages for acts of its employees. *Country Roads, Inc. v. Witt*, 737 S.W.2d 362, 364 (Tex.App.—Houston [14th Dist.] 1987, no writ).

■ The trial court made the following fact finding: "On April 20, 1991, Plaintiff MICHAEL L. MOORE, while a patron at DESIREE, was, without provocation, struck and beaten by Defendant CRAIG LEWIS." We find that this finding equated to a finding of willful or malicious conduct. There was uncontroverted evidence that Lewis, without justification, smashed a large drink-filled cocktail glass on the side of Moore's head. Just as Lewis moved to strike Moore, Lewis was reported to have said, "I've got something for your mother-f----- ass." We find the evidence was legally and factually sufficient to support the finding, and we overrule point five.

### B. Lewis' Managerial Status

In point six, Durand maintains that the trial court erred in awarding punitive damages because there was no fact finding that Lewis acted in a managerial capacity.

This finding could possibly be presumed. When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, *omitted unrequested elements, when supported by ev-* *idence, will be supplied by presumption in support of the judgment. . . .*

Tex.R.Civ.P. 299 (emphasis added).

■ An employer may be liable for punitive damages for an employee's misconduct if: (1) the employer authorized the doing and manner of the act; OR (2) the employee was unfit and the employer was reckless in employing him; OR (3) the employee was engaged in managerial capacity and was acting in the scope of his employment; OR (4) the employer or manager of the employer ratified or approved the act. *King v. McGuff*, 149 Tex. 432, 234 S.W.2d 403, 405 (1950).

■ Therefore, once the underlying liability is established, the additional elements required to impose punitive damages on an employer include: (1) willful or malicious conduct by the employee, AND one of the bases of employer responsibility listed above. We have found that the trial court made a finding of willful or malicious conduct. Therefore, one element of employer liability for punitive damages is established, and the remaining element or elements may be presumed if supported by the evidence. We overrule point six.

■ In points eight and nine, Durand asserts that the trial court erred in awarding punitive damages because the evidence was legally and factually insufficient to support an implied finding that Lewis was a managerial employee. We agree.

Viewing the evidence in the light most favorable to the implied finding, there was testimony that Lewis announced, "I'm the manager of this damn business." He also stated, "I'm the boss here. This is my show. I'm running this show." But "[o]ne of the most fundamental rules of the law is that the mere declarations of an alleged agent, standing alone, are incompetent to establish either the existence of the alleged agency or the scope or extent of the alleged agent's authority." 3 Tex.Jur.3d *Agency* § 240 (1980) (footnote and cases cited therein omitted); *Palmer v. Radcliff Fin. Corp.*, 344 S.W.2d 896, 898 (Tex.Civ.App.—Houston 1961, writ dism'd w.o.j.) (even though admitted without objection, declaration by alleged agent that he was acting for defendant principal was

pure hearsay and incompetent to prove agency).

Moore's reliance on *Purvis v. Prattco, Inc.*, 595 S.W.2d 103 (Tex.1980), is misplaced. *Purvis* does not stand for the proposition that a person's declaring himself a "manager," standing alone, is some evidence of actual managerial authority. In *Purvis*, in addition to a motel employee's identifying himself as the "night manager," there was evidence that the *employer* designated the employee as "night manager," that the employee was responsible for motel security, was the most senior employee on duty on the night shift, and was authorized to report directly to the employer's director of operations. *Id.* at 105.

We find that the self-declarations by Lewis that he was "boss" and "manager" were no evidence that he had actual managerial capacity.

Moore next points us to testimony that Lewis worked eighteen hours a day, picked up and stocked supplies, cleaned the club, and filled in for waitresses who didn't show up for work. Moore further asserts that Lewis exercised managerial discretion in deciding who to admit to the club.

■ A "manager" is a "person chosen or appointed to manage, direct, or administer the affairs of another person or of a corporation or company. The designation of 'manager' implies general power and permits reasonable inferences that the employee so designated is invested with the general conduct and control of his employer's business." BLACK's LAW DICTIONARY 865 (5th ed. 1979). A "manager" is one (1) who has authority to employ, direct, and discharge servants of the employer, (2) who is engaged in the performance of non-delegable or absolute duties of the employer, or (3) to whom the employer has confided the management of the whole or a department or division of his business. *See Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397, 406 (1934).

■ There was no evidence that Durand designated or referred to Lewis as a "manager." Also, by no stretch, could Lewis' duties be characterized as managerial. There was no evidence that Lewis had supervisory control over any other employees, that he had

authority to hire and fire staff, or that he had any discretion to perform tasks other than those assigned to him on a particular night.

We find that there is no evidence that Lewis had managerial capacity and sustain point eight. Point nine is moot and overruled.

## C. Durand's Approval or Ratification of Lewis' Actions.

In point seven, Durand complains that the trial court erred in awarding punitive damages because there was no fact finding that Durand approved or ratified Lewis' alleged conduct.

As discussed above, this finding could possibly be presumed. We overrule point seven.

In points ten and eleven, Durand asserts that the trial court erred in awarding punitive damages because the evidence was legally and factually insufficient to support an implied finding that Durand approved or ratified Lewis' assault of Moore. We agree.

There was evidence that Durand paid Lewis for his night's work the night of the assault and that Durand kept Lewis in his employ for several months after the incident. Durand did not fire Lewis, but Lewis eventually quit.

■ The mere retention of an employee in the employer's service does not constitute a ratification of an unlawful act by the employee so as to render the employer liable in exemplary damages. *See Home Tel. & Elec. Co. v. Branton*, 7 S.W.2d 627, 629 (Tex.Civ. App.—Eastland 1928), *aff'd*, 23 S.W.2d 294. This is not a case like *Country Roads* where punitive damages were upheld based on a prior pattern of violent behavior by nightclub employees evidenced by six pending lawsuits. *Country Roads*, 737 S.W.2d at 364–65.

■ Moore also urges us to consider the following statement by Durand as evidence that Durand ratified Lewis' actions:

Q: [Plaintiff's Counsel] Did Craig Lewis operate outside the scope of his job duties that night?

A: [Durand] No, he didn't.

But Durand immediately explained his answer:

A: What I mean by "No, I didn't," it's not because he was fighting. His job duties—what I'm speaking of—is checking I.D.'s and letting people in and out of the club. That's his job duties. To fight—to me, in my opinion—was a personal thing that the Plaintiff took on Craig for some reason or another. . . .

We find that Durand's statement was no evidence that he ratified or approved Lewis' actions.

We sustain point ten. Point eleven is moot and overruled.

### D. Lewis Was Unfit and Durand Reckless in Hiring

There is no evidence in the record that Lewis had a history of violence and was therefore unfit for his duties as doorman.

### E. Lewis Authorized the Doing and Manner of Lewis' Assault

There was no evidence to support an implied finding that Durand expressly or impliedly authorized the assault on Moore.

In sum, there was no evidence to imply the findings necessary to sustain an award of punitive damages against Durand.

### III. Conclusion

We affirm the judgment below as to Durand's liability for $2,500 in actual damages. However, we reverse the award of punitive damages and render judgment that Moore take nothing from Durand in that regard.

SEARS, Justice, concurring and dissenting.

I concur with the majority opinion except the reversal of the punitive damages. I dissent from that reversal and would affirm the punitive damages.

The majority opinion goes to great lengths to discuss cases which this appeal is like, and cases which this appeal is not like; however, one previous opinion of this court is dispositive of this appeal. In the *Country Roads* case, the facts are very similar to the facts of

this case, although the past history of the establishment is more egregious than in the current appeal. *See Country Roads, Inc. v. Witt,* 737 S.W.2d 362 (Tex.App.—Houston [14th Dist.] 1987). In *Country Roads,* a customer was . assaulted by an employee. The employer testified that the employees were "not to handle disturbances involving physical violence; in such a situation they were to summon a police officer." *Id.* at 364. The assailant in *Country Roads,* like the assailant in this appeal, was the head doorman. The *Country Roads* "doorman" were instructed that their job was only to "monitor the patrons compliance with age restrictions and dress code." In the present appeal, the assailant, Lewis, was only to monitor the patrons entering the club. However, the jury in *Country Roads* and the trial judge in *Durand* both apparently recognized the inherent duty of a doorman is to also be a part-time "bouncer", in that he must either eject patrons from the club or prevent their entry into the club. Both acts, out of necessity, will frequently result in physical contact. In both cases the trier of facts found that the doorman was acting within the course and scope of his employment, that he assaulted the plaintiff, that the plaintiff was injured, that there was malice, and that such malice of the employee could be inferred to the employer in assessing punitive damages. Although there was more evidence in *Country Roads* of prior physical assaults, that alone was not determinative of the punitive issue.

The trial court, as the finder of fact, was in the best position to listen to the evidence and determine the credibility of the witnesses. Quite simply, the trial court could have disbelieved Durand's testimony that the assault was outside the authority that he had given to Lewis. The court could have believed that Durand ratified and approved of the acts committed by Lewis by keeping him in his employment in the same capacity that he was in when he assaulted Michael Moore. The court could have also found that Lewis was a "manager" or a person with managerial power or duty when testimony was elicited that Lewis worked 18 hours a day. It is not common for employees below managerial level to work more than 8 hours a day on a regular basis. All of these facts would cer-

tainly corroborate the statements of Lewis that he was the "manager, the boss;" "this is my show;" "I am running this show;" "I'm the manager of this damn business." The court could have also assessed the punitive damages by finding that Durand was reckless in employing Lewis who proved to be a violent and dangerous person. Durand did no background check on Lewis, failed to contact any of his prior employers, and failed to check to determine if he had a criminal record. Or, the court could have found that Lewis worked in a "managerial" capacity because he had sole authority to determine which customers would enter the club, and who could not. Finally, the court could have believed the testimony of Durand when he testified under oath that Lewis *did not* "operate outside the scope of his job duties that night." Even though Durand followed his answer with an attempted explanation, the trial court simply could have believed his answer and disbelieved his explanation. The trier of fact is free to believe or disbelieve all or any part of *any witnesses testimony. Miller v. Kendall,* 804 S.W.2d 933, 939 (Tex. App.—Houston [1st Dist.] 1990).

It is not within the power of the court of appeals to second guess the finders of fact. "In reviewing factual sufficiency points, the court of appeals is not called on to summarily disregard evidence or to substitute its judgment for the [fact finders]. Rather, the court of appeals is called on to apply legal analysis to the evidence and *avoid summary conclusions* ..." (emphasis added). *Lofton v. Texas Brine,* 720 S.W.2d 804, 805 (Tex. 1986). We should not disturb the judgment when there is *some* evidence of probative value to support the findings of the trial court. *Lee-Wright, Inc. v. Hall,* 840 S.W.2d 572 (Tex.App.—Houston [1st Dist.] 1992, no writ.) I would affirm the findings and judgment of the trial court.