Affirmed and Opinion filed February 10, 2004









Affirmed and Opinion filed February 10, 2004.

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00358-CV

____________

 

BELINDA BUCK, Appellant

 

V.

 

PHILIP S. BLUM, INDIVIDUALLY
AND D/B/A HOUSTON NEUROLOGICAL INSTITUTE, AND KIMBERLY E. MONDAY, INDIVIDUALLY
AND D/B/A HOUSTON NEUROLOGICAL INSTITUTE, Appellees

 



 

On Appeal from the 333rd
District Court

Harris County, Texas

Trial Court Cause No. 01-10880

 



 

O P I N I O N








Belinda Buck sued Dr. Albert Yen together with Dr. Philip
Blum and Dr. Kimberly Monday, owners of Houston Neurological Institute, based
on an assault and battery allegedly occurring during the course of a
neurological examination.  This appeal
involves only her claims against the employers based on respondeat
superior and negligence.[1]  The trial court granted summary judgment
against Buck=s respondeat
superior claim and dismissed her negligence claim with prejudice.  We affirm.

Background

In her deposition, Buck testified that she went to HNI for a
neurological examination that was conducted by Yen.  She then stated

But the next thing I remember
is [Yen] wanting to examine, with my hands behind my back, to examine the
strength of my hands.  He asked me to putCopen my hands behind my
back.  Therefore, I did.  He stepped to the side of me towards the
angle here (indicating) where I could just barely see him.  He put an object in my hand and asked me to
squeeze.  I did.  It was a cold metal object.  He did my left hand, my right hand.  [&]  He said he wanted me to do it again.  That=s when he put his penis in my
left hand and told me to squeeze.     

Based on this alleged incident, Buck asserted claims against
Yen and appellees. 
In response to her respondeat superior claim, appellees filed a motion for summary judgment asserting
that Yen was not acting in the course and scope of his employment at the time
of the alleged assault.  In response to
the negligence claim, appellees moved to dismiss for
failure to file an expert report under the Texas Medical Liability and
Insurance Improvement Act.  Tex. Rev. Civ. Stat. Ann. art. 4590i
(Vernon Supp. 2003) (repealed 2003) (current version at Tex. Civ. Prac. & Rem. Code Ann. ' 74.001B.507 (Vernon Supp. 2004)).  The trial court granted summary judgment
against the respondeat superior claim and dismissed
the negligence claim with prejudice.  On
appeal, Buck contends both that she presented proof Yen was acting in the
course and scope of his employment and that appellees
failed to present proof he was not.  She
further argues she was not required to file an expert report because her claim
is not a Ahealth care liability claim@ under the Act.

Respondeat Superior








In her first issue, Buck contends that the trial court erred
in granting summary judgment against her respondeat
superior claim.  In considering this
issue, we utilize the normal standards of review for traditional summary judgments.  See Tex.
R. Civ. P. 166a; Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546,
548 (Tex. 1985).  A defendant, as movant, is entitled to summary judgment if it (1) disproves
at least one element of plaintiff=s theory of recovery, or (2)
pleads and conclusively establishes each essential element of an affirmative
defense thereby rebutting the plaintiff=s cause of action.  Wilie v.
Signature Geophysical Servs., Inc., 65 S.W.3d
355, 359 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).  As a general rule, there is no
duty to control the conduct of another.  Ginther v. Domino=s Pizza, Inc., 93 S.W.3d 300, 303 (Tex. App.CHouston [14th Dist.] 2002, pet. denied) (citing Otis
Eng=g Corp. v. Clark, 668 S.W.2d 307, 309 (Tex.
1983)).  However, an employer may be held
liable for the tortious acts of an employee if the
acts are within the course and scope of employment.  See Baptist Mem=l Hosp. Sys. v. Sampson, 969 S.W.2d 945, 947 (Tex.
1998).  This requires proof that the
employee is acting (1) within the general authority granted by the employer,
(2) in furtherance of the employer=s business, and (3) for the
accomplishment of an object for which he is employed.  See Mata v. Andres Transp.,
Inc., 900 S.W.2d 363, 366 (Tex. App.CHouston [14th Dist.] 1995, no writ).

The typical respondeat superior
claim involves an allegation of negligence on the part of the employee.  See, e.g., Sampson, 969 S.W.2d 945
(concerning allegations of negligent medical treatment); Mata, 900
S.W.2d 363 (concerning alleged negligence resulting in car accident).  The present case, however, involves an
allegation of assault, an intentional tort. 
As the Texas Supreme Court has observed:

It is not ordinarily within the
scope of a servant=s authority to commit an
assault on a third person. . . .  Usually
assault is the expression of personal animosity and is not for the purpose of
carrying out the master=s business.  [&]  A[W]hen the servant turns aside,
for however short a time, from the prosecution of the master=s work to engage in an affair
wholly his own, he ceases to act for the master, and the responsibility for
that which he does in pursuing his own business or pleasure is upon him alone.@








Texas & P. Ry. Co. v. Hagenloh, 151 Tex. 191, 247 S.W.2d 236, 239, 241 (1952) (quoting Galveston,
H. & S.A. Ry. Co. v. Currie, 100 Tex. 136, 96
S.W. 1073 (1906)).[2]  Additionally, courts consider whether the
assault was so connected with and immediately arising out of authorized
employment tasks as to merge the task and the assaultive
conduct into one indivisible tort imputed to the employer.  See, e.g., Durand v. Moore, 879 S.W.2d 196, 199, 201 (Tex. App.CHouston [1st Dist.] 1994, no writ) (citing Houston
Transit Co. v. Felder, 208 S.W.2d 880, 882 (Tex. 1948)).[3]








In the present case, Buck contends both that appellees failed to present summary judgment proof
establishing that Yen=s actions were not in the
course and scope of his employment and that she provided proof that his actions
were in the course and scope.  For proof
that Yen was not acting in the course and scope of his employment, we need look
no further than Buck=s own allegations.  A plaintiff may indeed plead herself out of
court if she alleges facts that negate her cause of action.  See, e.g., Saenz v. Family Sec. Ins. Co.
of Am., 786 S.W.2d 110, 111 (Tex. App.CSan Antonio 1990, writ denied) (holding
plaintiff=s respondeat
superior pleading negated course and scope element where factual allegations
demonstrated employee was not acting in furtherance of his duties when he
committed fraud).

Here, Buck pleaded that during a neurological examination,
Yen placed his penis in her hand instead of using the metal weight he had used
previously.  Buck contends that since the
procedure itself was part of the examination, and thus within the scope of Yen=s authority, the use of Yen=s body part was simply an
inappropriate exercise of the delegated duty. 
While it is undisputed Yen=s alleged action was
inappropriate, it cannot be fathomed that the action was in furtherance of the
employer=s business or for the
accomplishment of an object for which he was employed.  See Mata, 900 S.W.2d at 366.  At the very moment Yen placed his body part
in her hand (assuming he did), he was acting in his own prurient interest and
ceased to be acting for the employer. 
The neurological examination at that point was only a pretense or a
means for Yen=s inappropriate personal
gratification.  Nor can it be said the
assault was so connected with and immediately arising out of Yen=s employment tasks as to merge
the activities into one indivisible tort. 
See Durand, 879 S.W.2d
at 199, 201.  A club bouncer has an inherently
confrontational job that may well require physical force; whereas, neurology is
not an inherently sexual profession and never requires the action allegedly perpetrated
by Yen.  As a matter of law, Yen=s alleged conduct did not arise
out of the course and scope of his employment, and, thus, his employers cannot
be held liable under respondeat superior.








Buck additionally contends she presented evidence, in the
form of Yen=s answers to interrogatories,
to show he was acting in the course and scope of his employment.  However, a party=s answers to interrogatories
can only be used against that party and not against another party, including a
codefendant.  See Tex. R. Civ. P. 197.3.  Furthermore, Yen denied what Buck accused him
of doing.[4]  Therefore, his statement in the interrogatory
answers that he was acting in the course and scope does not suggest that the
alleged inappropriate touching was in the course and scope.  Thus, we find as a matter of law that Buck
has failed to present proof sufficient to raise a fact issue.  Accordingly, the trial court did not err in
granting summary judgment on the respondeat superior
claim, and Buck=s first issue is overruled.

Negligence

In her second issue, Buck contends that the trial court
erred in dismissing her negligence claim because it was not a Ahealth care liability claim@ under the Texas Medical
Liability and Insurance Improvement Act. 
Tex. Rev. Civ. Stat. Ann.
art. 4590i (Vernon Supp. 2003) (repealed 2003) (current version at Tex. Civ. Prac. & Rem. Code Ann. ' 74.001B.507 (Vernon Supp. 2004)).  A dismissal under 4590i is generally reviewed
under an abuse of discretion standard.  See,
e.g., Ponce v. El Paso Healthcare Sys., Ltd., 55 S.W.3d 34, 36 (Tex.
App.CEl Paso 2001, pet.
denied).  However, to the extent
resolution of this issue requires interpretation of the statute itself, we
review under a de novo standard.  See
id.  The act defines Ahealthy care liability claim@ as follows:

AHealth care liability claim@ means a cause of action
against a health care provider or physician for treatment, lack of treatment,
or other claimed departure from accepted standards of medical care or health
care or safety which proximately results in injury to or death of the patient,
whether the patient=s claim or cause of action
sounds in tort or contract.








Tex. Rev. Civ. Stat. Ann. art. 4590i, ' 1.03(a)(4) (repealed).  In determining whether a particular case
presents a health care liability claim, we must examine the underlying nature
of the allegations.  See Bush v. Green
Oaks Operator, Inc., 39 S.W.3d
669, 672 (Tex. App.CDallas 2001, no pet.) (citing Sorokolit v. Rhodes, 889 S.W.2d 239, 242 (Tex.
1994)).   In doing so, we are not bound
by the party=s own characterization of the
claims.  See Ponce, 55 S.W.3d at
38.  Generally, a cause of action will be
considered a health care liability claim if it is based on a breach of a
standard of care applicable to health care providers.  Bush, 39 S.W.3d at 672.  The act or omission complained of must have
been an inseparable part of the rendition of medical services.  Id.

Several courts have considered the issue of whether
allegations stemming from an assault by another patient should be
considered a health care liability claim. 
See, e.g., Healthcare Ctrs. of Tex., Inc.
v. Rigby, 97 S.W.3d 610 (Tex. App.CHouston [14th Dist.] 2002, pet.
denied); Zuniga v. Healthcare San Antonio, Inc., 94 S.W.3d 778 (Tex.
App.CSan Antonio 2002, no pet.); Rubio
v. Diversicare Gen. Partner, Inc., 82 S.W.3d 778
(Tex. App.CCorpus Christi 2002, pet.
granted); Bush, 39 S.W.3d
669.  However, the parties cite to no
cases considering whether an assault by a treating physician can result in a
health care liability claim, nor have we found any such cases.  Each of the cases addressing attacks by
fellow patients concluded that the potential liability was a matter of premises
liability (or other general negligence theory) and not a health care
claim.  See Rigby, 97 S.W.3d at
620; Zuniga, 94 S.W.3d at 783; Rubio, 82 S.W.3d at 783; Bush,
39 S.W.3d at 672-73.  However, these cases emphasized that the
claims did not depend on any standard of care owed to a patient but instead
alleged a more general duty such as the duty to warn of an unsafe condition or
known risk.  For example, in Rigby,
the patient committing the assault was a Aknown sexual deviant.@  97 S.W.3d at 620.  Further, in Rigby and Zuniga,
the courts noted the language in the Act regarding departures from standards
regarding patient safety; however, both courts suggest even lapses in patient
safety must be tied to the rendition of medical services and the standards of
safety within the health care industry in order to be covered by the Act.  See Rigby, 97 S.W.3d at 620; Zuniga,
94 S.W.3d at 783.[5]








In her live pleading at the time of the dismissal, Buck
alleged that appellees were negligent in (1) failing
to properly supervise Yen and (2) failing to institute or follow procedures
that would reduce the potential for assault, particularly such as requiring a
second staff member to be present during an examination.  Essentially, these claims allege that appellees violated the standards of care related to
supervision of a medical doctor performing a medical examination and the
institution of procedures governing medical examinations.  Thus, we interpret these claims as relating
to medical care and constituting health care liability claims as defined by the
Act.  See Henry v. Premier Healthstaff, 22 S.W.3d 124, 127 (Tex. App.CFort Worth 2000, no pet.)
(holding claims against hospital for negligent training, instruction, and
supervision of staff member who was not a health care provider constituted
health care liability claims).[6]  When a claim falls under the Act, the
plaintiff is required to furnish an expert report within 180 days of filing the
claim or face dismissal with prejudice (as the court did here).  See Tex.
Rev. Civ. Stat. Ann. art. 4590i ' 13.01(d)B(e) (repealed 2003).  Buck filed no expert report.  Accordingly, the trial court did not err in
dismissing the claims for failure to fulfill the Act=s requirements.  Buck=s second issue is overruled.

The trial court=s judgment is affirmed.

 

 

/s/      Adele
Hedges

Chief Justice

 

 

Judgment rendered and Opinion
filed February 10, 2004.

Panel consists of Chief Justice
Hedges and Justices Anderson and Seymore.











[1]  These claims
were severed from those against Yen.





[2]  The Hagenloh court went on to explain that an assault
could be considered in the course and scope of employment when the nature of
the employment necessitated the use of force (such as the duty to guard
property) so that the use of force may be in furtherance of the employer=s business even if more force than necessary is
applied.  247 S.W.2d at 239.





[3]  In Durand,
the court upheld a respondeat superior finding where
a club bouncer assaulted a complaining customer.  879
S.W.2d
at 200. 
The court determined that there was sufficient evidence to demonstrate
that the employee was simply Aoverzealous@ in
performing his authorized duties.  Id.  In Frito‑Lay, Inc. v. Ramos, the
court upheld a respondeat superior verdict where a
snack company employee shoved a customer while attempting to take the company=s merchandise rack from the customer=s store after the customer stated he no longer wanted
to carry the company=s products.  770
S.W.2d 887, 889 (Tex. App.CEl Paso 1989), rev=d on other grounds, 784 S.W.2d 667 (1990).  In Fisher
v. Carrousel Motor Hotel, Inc., the court held a hotel manager was acting
in the course and scope when he refused to allow a black man to eat in the
hotel restaurant because of the hotel=s policy
of discrimination.  424 S.W.2d 627, 631
(Tex. 1967).

On the other hand, in Green v. Jackson,
the court held that it was not in course and scope for an employee to fight
with a customer over a personal debt. 
674 S.W.2d 395, 399 (Tex. App.CAmarillo
1984, writ ref=d n.r.e.).  In Tierra Drilling Corp. v. Detmar, the court held that it was not in course and
scope for a supervisor to assault an employee because the supervisor disliked
Texans.  666 S.W.2d 661, 662 (Tex. App.CCorpus Christi 1984, no writ).  And in McCord v. Southern Distributing Co.,
it was held not to be in the course of employment for a company=s Agood will man@ to
assault a customer.  356 S.W.2d 350, 353
(Tex. Civ. App.CAustin
1962, no writ).  The court noted the employee=s title refuted any inference that he was authorized
to use force in the performance of his duties. 
Id.





[4]  In response to
Buck=s pleadings, Yen entered a general denial.  The interrogatories propounded by Buck do not
ask Yen for his version of events.  Buck
does not point to any place in the record, nor has our review revealed any,
where Yen admitted any touching as alleged by Buck.





[5]  We further
note the current version of the Act defines Ahealth
care liability claim@ even more inclusively:

 

AHealth care liability claim@ means a cause of action against a health care
provider or physician for treatment, lack of treatment, or other claimed
departure from accepted standards of medical care, or health care, or safety or
professional or administrative services directly related to health care, which
proximately results in injury to or death of a claimant, whether the claimant=s claim or cause of action sounds in tort or contract.

 

Tex. Civ.
Prac. & Rem. Code Ann. ' 74.001 (a)(13).





[6]  Our resolution
of this issue is not inconsistent with our resolution of the respondeat superior issue above.  Although Yen=s
alleged assaultive conduct would certainly not be
considered an inseparable part of the rendition of medical care, see Bush,
39 S.W.3d at 672, the allegations against appellees,
that they failed to supervise or institute procedures governing a medical
doctor=s performance of a medical examination, are by their
very nature inseparable from the rendition of medical care.